**In re TURKCELL ILETISIM HIZMETLER, A.S. SECURITIES LITIGATION**

No. 00 CIV. 8913(NRB).

United States District Court, S.D. New York.

Nov. 2, 2001.

## MEMORANDUM AND ORDER

BUCHWALD, District Judge.

This is a class action brought on behalf of those who purchased the American Depository Shares issued by defendant Turkcell Iletisim Hizmetleri A.S. ("Turkcell") in an initial public offering in July 2000. Plaintiff class alleges violations of sections 11 and 15 of the Securities Act of 1933. The defendants include Turkcell, its underwriters, Goldman Sachs International, Morgan Stanley & Co. International Limited, Credit Suisse First Boston (Europe), Lehman Brothers International AG London, and UBS AG, its Chief Executive Officer, Cuneyt Turktan, and its Chief Financial Officer Ekrem Tokay. Now pending is the defendants' joint motion to dismiss the claims, pursuant to Fed.R.Civ.P. 12(b)(6). For the reasons discussed below, the motion is granted in part and denied in part.

### BACKGROUND

This complaint stems from alleged omissions in a Prospectus issued by Turkcell, a mobile communications service provider in Turkey, in connection with an initial public offering of American Depository Shares in July 2000. The Prospectus was filed with the SEC on or about June 26, 2000, and became effective on or about July 10, 2000.

Plaintiffs make two distinct claims. First, they allege that defendants failed to

disclose material information regarding the rate at which customers were disconnected from the service (the "churn rate"), a key factor for evaluating mobile phone companies. Specifically, Turkcell's Prospectus states that its churn rate was 0.3% for the three months ending on March 31, 2000. Plaintiffs allege that the Prospectus omitted the fact that Turkcell's churn rate did not include subscribers whose service had been disconnected but with respect to whom Turkcell had not yet completed the legal process accompanying disconnection. According to a Morgan Stanley Dean Witter report, at a meeting with stock analysts on September 20, 2000, Turkcell allegedly stated that there were up to 700,000 customers who had been disconnected but as to whom Turkcell had not yet completed the accompanying legal process and who had, therefore, not been included in Turkcell's calculation of its churn rate.

Plaintiffs second allegation concerns Turkcell's failure to include financial statements for the quarter ending June 30, 2000. The Prospectus contained audited financial statements for the fiscal years ending December 31, 1997, 1998, and 1999. It also contained unaudited financial statements for the quarters ending March 31, 1999, and March 31, 2000. Plaintiffs allege that this data showed a series of increases in operating income through the first quarter of 2000. On August 11, 2000, Turkcell released financial results for the first half of 2000, which showed that operating income fell by 9% from the first quarter of 2000 to the second quarter of 2000.

Plaintiffs initially filed suit on November 22, 2000, and the various class actions were consolidated on March 8, 2001. By letter dated May 4, 2001, defendants sought leave to move to dismiss the complaint and set forth their proposed arguments. On May 23, 2001, the Court sent a letter to counsel confirming plaintiffs' advice to chambers that they would not seek to amend their complaint in response to the motion to dismiss. This Court heard oral arguments on defendants' motion to dismiss on October 12, 2001.

## DISCUSSION

### I. Standard on a Motion to Dismiss

For purposes of a motion to dismiss, we are required to accept as true the factual assertions in the complaint. *Zinermon v. Burch,* 494 U.S. 113, 118, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990); *Charles W. v. Maul,* 214 F.3d 350, 356 (2d. Cir.2000). Additionally, for purposes of a Fed.R.Civ.P. 12(b)(6) motion, a complaint is deemed to include any statements or documents incorporated in it by reference, *Rothman v. Gregor,* 220 F.3d 81, 88 (2d Cir.2000), *Cosmas v. Hassett,* 886 F.2d 8, 13 (2d Cir.1989), as well as publicly disclosed documents required that have been filed with the SEC. *Rothman,* 220 F.3d at 88; *Cortec Industries, Inc. v. Sum Holding L.P.,* 949 F.2d 42, 47–48 (2d Cir.1991).

### II. Applicability of the Rule 9(b) Heightened Pleading Standard

As a threshold issue, defendants assert that the Fed.R.Civ.P. 9(b) heightened pleading standard for fraud claims applies to this complaint and that, therefore, plaintiffs must plead their claims with particularity. The case law is unclear as to whether claims under section 11 of the Securities Act must allege facts with particularity, or whether they are subject to the more liberal standards of Fed.R.Civ.P. 8(a)(2). There are numerous decisions in this district that have found that, where section 11 claims sound in fraud, the heightened pleading requirements of Rule 9(b) apply. *See In re Complete Management Inc.,* 153 F.Supp.2d 314, 340 (S.D.N.Y.2001); *In re N2K Inc. Securities*

*Litigation,* 82 F.Supp.2d 204, 210 n. 10 (S.D.N.Y.2000). *But see In re AnnTaylor Stores Securities Litigation,* 807 F.Supp. 990, 1003 (S.D.N.Y.1992) (stating that "courts have long held that Rule 9(b) does not apply to a Section 11 claim."). The Second Circuit has not yet ruled on this issue, in fact expressly reserving any discussion of it. *See In re N2K Inc. Securities Litigation,* 202 F.3d 81 n. 1 (2d Cir. 2000).

In this case, we need not determine whether section 11 claims that sound in fraud require satisfaction of the heightened pleading requirements of Rule 9(b). At oral argument, plaintiffs argued that, if the Court found that Rule 9(b) applied, it should also find that they have alleged the who, what, when, and where, and why of their claim, notwithstanding the apparent admission in their brief that "[d]efendants are correct that the Complaint does not plead fraud with particularity." *See Luce v. Edelstein,* 802 F.2d 49, 54 (holding that Rule 9(b) requires that plaintiff specify the time, place, speaker, and content of the alleged fraudulent statement). We are persuaded that plaintiffs have plead with sufficient particularity, so that we need not reach the issue of whether Rule 9(b) applies to section 11 claims.

### III. Defendants Failure to Disclose Disconnected Customer Totals in Prospectus

■ Section 11 of the Securities Act requires the disclosure of all material information. The question, then, is whether Turkcell's alleged misstatements are material. An omitted fact is deemed material if it would have "significantly altered the 'total mix' of information made available." *TSC Industries, Inc. v. Northway, Inc.,* 426 U.S. 438, 449, 96 S.Ct. 2126, 48 L.Ed.2d 757 (1976). *See also Kronfeld v. Trans World Airlines, Inc.,* 832 F.2d 726,

731 (applying the *Northway* materiality standard to section 11 claims).

■ Plaintiffs allege that defendants omitted material information about an increase in Turkcell's churn rate. They allege that the defendants omitted any mention of the customers who had been disconnected but as to whom Turkcell had not yet completed the legal process accompanying disconnection. The complaint further alleges that, if the 700,000 subscribers who had their service cut off were included in the churn total, the rate in the Prospectus would have been 11%, rather than 0.3%. Given the Prospectus' statement that the acquisition cost was $60 per subscriber, this increased churn could have cost Turkcell $42 million to replace the disconnected customers, more than 10% of their reported net income for 1999. Furthermore, according to the September 20 Morgan Stanley report, defendants admitted that the churn rates provided in the Prospectus were calculated differently than other mobile communications providers because they did not include the disconnected customers at issue here, even though the Prospectus compared Turkcell's churn rate to that of other providers. Disclosure of the pending disconnections and the incomparability of Turkcell's reported churn rate with other carriers would likely have affected the "total mix" of information available to investors.

■ Defendants initially argue that the allegedly misleading information in the Prospectus is forward-looking and is therefore subject to the "bespeaks caution" doctrine. Courts have held that meaningful cautionary language can render omissions or misrepresentations immaterial. *In re Donald J. Trump Casino Sec. Litig.,* 7 F.3d 357, 371 (3d Cir.1993) (stating that "when an offering document's forecasts, opinions or projections are accompanied by

meaningful cautionary statements, the forward-looking statements will not form the basis for a securities fraud claim if those statements did not affect the 'total mix' of information the document provided investors."). But plaintiffs persuasively argue that the statements at issue about churn were not forward looking at all. The issue is not whether Turkcell failed to predict the increase in churn, but rather whether it omitted material information about its churn rate at the time it issued the Prospectus. The September 20 Morgan Stanley analyst report indicates that 200,000 subscribers had been disconnected in the quarters before the Offering. Because the statements are alleged to be inaccurate at the time they were made, the forward-looking statement doctrine cannot apply, and we make no decision as to whether Turkcell's cautionary language was adequate to warrant the "bespeaks caution" exemption. *See In re Oxford Health Plans Sec. Litig.*, 187 F.R.D. 133, 141 (S.D.N.Y.1999) (stating that the bespeaks caution doctrine does not apply to a defendant's failure to disclose existing and historical material facts).

■ Defendants also claim that the complaint fails to allege that the various defendants had any knowledge of the increased churn rate. This argument is flawed. Section 11 does provide a due diligence defense for underwriters, but the burden of proof for the defense is on the defendants. The plaintiffs need not allege that defendants breached their duty of due diligence. Moreover, plaintiffs need not plead defendants' knowledge as there is no scienter requirement in section 11. *See Herman & MacLean v. Huddleston*, 459 U.S. 375, 382, 103 S.Ct. 683, 74 L.Ed.2d 548 (1983).

Plaintiffs have sufficiently alleged a material omission in Turkcell's prospectus to withstand a motion to dismiss. Therefore, defendants' motion to dismiss the churn claim is denied.

## IV. Defendants Failure to Include Second Quarter Results in Prospectus

Plaintiffs also allege that Turkcell failed to disclose its financial results for the period ending June 30, 2000, in its Prospectus, which became effective on July 10, 2000. They claim that Turkcell was under a duty to include this information in the Prospectus because its omission made the Prospectus false and misleading.

There are only two circumstances under which issuers must update the financial information provided in a prospectus. First, SEC Regulation S–X mandates that financial statements that are more than 135 days old as of the effective date must be updated. 17 C.F.R. § 210.3–12(a). Second, courts have mandated disclosure of interim financial information when the interim results represent an "extreme departure from the range of results which could be anticipated based on currently available information." *Shaw v. Digital Equipment Corp.*, 82 F.3d 1194, 1210 (1st Cir.1996).

■ Plaintiffs have not adequately alleged either of these two scenarios. They do not dispute that the financial statements in the Prospectus were less than 135 days old. They also make no showing that the 9% drop in operating income meets the *Shaw* standard. Plaintiffs' reliance on *Baffa v. Donaldson, Lufkin & Jenrette*, 999 F.Supp. 725 (S.D.N.Y.1998), is inapplicable in this case. In *Baffa*, the court, with very little discussion, cited allegations that defendants knew of information regarding "large financial losses" at the time the Prospectus became effective, to deny a motion to dismiss. *Id.*, at 728. Here, there are no losses whatsoever at issue.

The *Shaw* standard also requires that plaintiffs allege that defendants know of the material nonpublic information at issue. 82 F.3d at 1210. While plaintiffs are correct that section 11 claims do not generally require a showing of scienter, *Shaw* does, in effect, require such a showing. Furthermore, Item 303 of Regulation S-K requires that the company disclose "known trends" in its management discussion and analysis section, where plaintiffs arguably demand that the disclosure take place. 17 C.F.R. § 229.303(a)(3)(ii). The complaint fails to allege that there "trends" or that they were "known" as of the date the Prospectus became effective.

Plaintiffs cite a 9% drop in Turkcell's operating income from the first quarter to the second quarter, noting that this was the first time that operating income for Turkcell had fallen. Plaintiffs allege a decline in Turkcell's operating income, but not in any other financial indicator. We cannot see how the small decline in operating income represents an extreme departure from the expected range of results presented by Turkcell's Prospectus, particularly given the reluctance of courts to require companies to release results before, or within days of, the end of fiscal quarters. The disclosure structure set out by the SEC and the case law recognizes how unworkable and potentially misleading a system of instantaneous disclosure out the normal reporting periods would be. Moreover, acceptance of plaintiffs position would require the immediate release of data without the benefit of reflection or certainty provided by the traditionally recognized reporting periods. Therefore, defendants' motion to dismiss the second quarter results claim is granted.

### CONCLUSION

For the reasons discussed above, defendants' motion to dismiss is granted in part

and denied in part. The parties are hereby requested to appear on November 19, at 3:00 p.m. for a conference.

**IT IS SO ORDERED.**