**In re TURKCELL ILETISIM HIZ-
METLER, A.S. SECURITIES
LITIGATION.**

No. 00 Civ. 8913(NRB).

United States District Court,
S.D. New York.

Aug. 22, 2002.

Brian Philip Murray, Jacqueline Sailer, Rabin & Peckel, LLP, New York City, Michael G. Lange, Berman, Devalerio, Pease, Tabacco, Burt & Pucillo, Boston, MA, for Robert Robins.

Michael J. Chepiga, Leader & Berkon, LLP, New York City, for Goldman Sachs International, Margan Stanley Dean Witter, Credit Suisse First Boston Int'l (Europe), Deutsche Bank AG London, and UBS AG.

Jeremy G. Epstein, Shearman & Sterline, New York City, for Turkcell Iletisim Hizmetler, AS, Cuneyt Turktan, and Ekrem Tokay.

## MEMORANDUM AND ORDER

BUCHWALD, District Judge.

This is a class action brought on behalf of those who purchased the American Depository Shares issued by defendant Turkcell Iletisim Hizmetleri A.S. ("Turkcell") pursuant to a registration statement issued in July 2000. Plaintiff class alleges violations of sections 11 and 15 of the Securities Act of 1933. The defendants include Turkcell, its Chief Execu-

tive Officer, Cuneyt Turktan, and its Chief Financial Officer Ekrem Tokay (the "Turkcell defendants") and its underwriters, Goldman Sachs International, Morgan Stanley & Co. International Limited, Credit Suisse First Boston (Europe), Lehman Brothers International AG London, and UBS AG (the "underwriter defendants"). Now pending is the plaintiffs' motion to certify A.O.A. Securities Anstalt ("AOA") and BPI Global Asset Management ("BPI") as lead plaintiffs, and Robert Robins, William Rasdolsky, Saul Silverman, William Speier, and Arif Temurcan as named plaintiffs for the class of people who purchased American Depository Receipts of Turkcell during the period between July 10, 2000, until September 21, 2000, inclusive, and who can trace their purchase to the July 10, 2000, registration statement. Defendants have opposed certification on several grounds.[1] For the reasons discussed below, the class is certified with A.O.A. as the sole lead plaintiff and Robert Robins, William Rasdolsky, Saul Silverman, William Speier, and Arif Temurcan as named plaintiffs.

## BACKGROUND

The facts surrounding this case are set out more fully in our November 1, 2001, Memorandum and Order, in which we granted defendants' motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) in part and denied it in part. 202 F.Supp.2d 8 (S.D.N.Y.2001). Briefly, this action arises out of alleged omissions in a prospectus issued by Turkcell, a mobile communications service provider in Turkey, in connection with its initial public offering of American Depository Shares. The prospectus was filed with the Securities and Exchange Commission on or about June 26, 2000, and became effective on or about July 10, 2000. Plaintiffs filed the complaint on November 22, 2000, and filed a consolidated an amended class action complaint on March 29, 2001. Plaintiffs filed this motion for class certification on March 20, 2002.

## DISCUSSION

### I. Rule 23(a)(2) Prerequisites for Class Action Certification

In order to qualify for certification as a class action, plaintiffs must meet the four-part test set out in Fed.R.Civ.P. 23(a), which states:

One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

We address each requirement in turn.

#### A. Numerosity

■ Plaintiffs do not have to demonstrate the precise number of potential class members. *Maywalt v. Parker & Parsley Petroleum Co.*, 147 F.R.D. 51, 55 (S.D.N.Y.1993), *aff'd* 67 F.3d 1072 (2d Cir.1995). Instead, in a securities class action, plaintiffs can demonstrate numerosity on the basis of large numbers of shares outstanding and traded. *See In re Oxford Health Plans*, 191 F.R.D. 369, 374 (S.D.N.Y.2000). Turkcell issued 96 million shares, and plaintiffs believe that there are thousands of class members, which would make joinder impracticable. Accordingly, plaintiffs have met the numerosity requirement.

#### B. Commonality

■ Plaintiffs' claim is based on defendants' alleged misstatements in the prospectus accompanying the issuance of Turkcell shares. There are several common questions of law and fact, which are set out in the complaint, including: whether the defendants violated section 11; whether the statements regarding churn rate were misleading; whether defendants Turktan and Tokay are "control persons" within the meaning of the

---

1. The Turkcell defendants filed a Memorandum of Law in Opposition to the Motion for Class Certification. The underwriter defendants joined

the motion as to Section II of the brief, dealing with whether the named representatives adequately represent the class.

Securities Act; and whether plaintiffs and other class members suffered any damages, and, if so, in what amount. Pl. Motion. at 11.

### C. Typicality

■ The commonality and typicality requirements of Rule 23(a) tend to merge. *See Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir.1997). Both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence. Typicality does not require a showing that the named plaintiffs' claims are identical to those of the class members but merely that the claims arise from the same course of events. *Trief v. Dun & Bradstreet Corp.*, 144 F.R.D. 193, 200 (S.D.N.Y.1992). The typicality requirement is often evaluated together with the adequacy-of-representation requirement, although the latter requirement also raises concerns about the competency of class counsel and conflicts of interest. *General Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 158 n. 13, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982). As all the prospective named plaintiffs claim losses as a result of the allegedly misleading registration statement, the class representatives' cases are typical of all class members.

### D. Representation

Defendants raise two objections to the ability of the named plaintiffs to represent the class. First, they object to the adequacy of plaintiffs Arif Temurcan, AOA, and BPI.[2] Second, they contend that, if we were to decline to certify Arif Temurcan, AOA, and BPI, there would be no proper representatives of the aftermarket purchasers to represent their interests in a potential conflict between the primary purchasers and the aftermarket purchasers.

#### 1. Adequacy of Proposed Plaintiffs

■ Although the Second Circuit has stated that "class certification may properly be denied 'where the class representatives ha[ve] so little knowledge of and involvement in the class action that they would be unable or unwilling to protect the interests of the class against the possibly competing interests of the attorneys.'" *Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1077–78 (2d Cir.1995), quoting *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 727 (11th Cir.1987), *cert. denied*, 485 U.S. 959, 108 S.Ct. 1220, 99 L.Ed.2d 421 (1988). Nonetheless, the Second Circuit has made it clear that the standard for representation does not require a high level of understanding of the action. *See Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 62 (2d Cir. 2000) (holding that a plaintiff who understood his role in the litigation, demonstrated a willingness to pursue it, and relied on counsel's expertise was an adequate representative).

#### a. Arif Temurcan

■ Based on his deposition testimony, it appears that Temurcan, an American citizen, meets the minimum standards for being a named plaintiff. Defendant attacks his qualifications because he does not speak English and lacks an understanding of the details of the action. However, he understands the basic nature of the lawsuit, and, while he does not grasp the nuances of a class action, his interests are clearly aligned with the class members whom he represents. Furthermore, there is no requirement that a representative plaintiff himself be able to communicate with counsel and understand the papers in the case. *See Surowitz v. Hilton Hotels Corp.*, 383 U.S. 363, 371–72, 86 S.Ct. 845, 15 L.Ed.2d 807 (1966) (holding that plaintiff who could not speak English, had a minimal grasp of the facts of her case, and relied on her son-in-law to handle her interactions with counsel still met the representation requirement). Mr. Temurcan relies on his daughter in much the same way that Mrs. Surowitz relied on her son-in-law, Mr. Brilliant. While Ms. Temurcan does not have a law degree, as Mr. Brilliant had, she is a college student and can communicate with counsel on behalf of Mr. Temurcan and keep

---

2. Defendants do not challenge the qualifications of Robert Robins, William Rasdolsky, Saul Silverman, and William Speier to serve as named plaintiffs.

him abreast of the status of the litigation. Mr. Temurcan demonstrated at his deposition that he is interested in vigorously pursuing the case. (Pesso Decl. Ex. B, Temurcan Dep. at 50:17–21 ("I am bringing an action on my own behalf for myself. But if others had damages like myself, in that case, I would like … for them to benefit.").) He purchased 500 shares at a total cost of more than $8,000. His interests are clearly aligned with the class members, and he is, therefore, an appropriate class representative.

### b. A.O.A. Securities Anstalt

■ Defendants contend, in passing, that AOA is a direct purchaser, rather than an aftermarket purchaser, and that it fails to qualify as a class representative because its principal, Arye Barest, has failed to demonstrate a proper understanding of his role in the case and has failed to produce "a complete and responsive set of documents." Def. Opp. Mem. at 12 n. 7. Having reviewed Mr. Barest's deposition, we find no merit in these arguments. Mr. Barest appears to understand the key principles of the litigation and is relying on counsel's expertise in securities law. *See In re AM Int'l Sec. Litig.*, 108 F.R.D. 190, 196–97 (S.D.N.Y.1985) (holding that "in complex litigations such as securities actions, a plaintiff need not have expert knowledge of all aspects of the case to qualify as a class representative, and a great deal of reliance on the expertise of counsel is to be expected.").

The deposition transcript suggests that AOA turned over substantial documentation to its counsel. (Pesso Decl. Ex. C, Barest Dep. at 123:21–25.) The fact that AOA had not, as of the date of defendants' opposition, handed over original copies of certain documentation does not warrant a finding that AOA had violated its fiduciary obligations to the class. Defendants cite *Darvin v. Int'l Harvester Co.*, 610 F.Supp. 255, 257 (S.D.N.Y.1985), to support its contention that a prospective class representative's failure to comply with discovery requests should pre-

clude its certification as a representative. *Id.* However, in *Darvin*, the court denied certification primarily on the grounds that the prospective plaintiff had provided inconsistent testimony that could become the focus of the litigation and therefore was an inappropriate class representative. His refusals to comply with reasonable discovery requests were also more severe, such as refusing to answer questions relevant to his representations at two depositions. *Id.* While AOA should fulfill its promise to turn over the documents at issue, its failure to do in the two weeks between Mr. Barest's deposition on April 22, 2002, and the filing of defendants' opposition on May 10, 2002, does not warrant a denial of certification.[3]

### c. BPI Global Asset Management

■ Defendants argue that BPI cannot be a class representative because it did not actually own Turkcell stock but instead acted as an investment advisor. The fact that BPI is an institutional investor does not itself preclude it from being a lead plaintiff. In fact, several courts have noted the benefits of having institutional investors serve as lead plaintiffs. *Takeda v. Turbodyne Technologies, Inc.*, 67 F.Supp.2d 1129, 1136 n. 18 (C.D.Cal.1999). *See also In re Razorfish*, 143 F.Supp.2d 304, 311 (S.D.N.Y.2001) (holding that the institutional investor proposed as lead plaintiff "closely fits the profile of the kind of lead plaintiff Congress had in mind when it enacted the Reform Act."). However, in most cases in which institutional investors were named lead plaintiffs, the institution invested its own assets. *See Takeda*, 67 F.Supp.2d at 1136 n. 18 (including as lead plaintiff an investment advising company that " 'invests on its own account,' so presumably some portion of its loss was incurred in a personal rather than a representative capacity."). BPI, by contrast, is purely an investment advisor, not itself an investor. It invested funds on behalf of two Northern Trust mutual funds. BPI's actual loss was limited to the .35% fee it earned on the total assets it

---

3. Having determined that both AOA and Mr. Temurcan are valid class representatives, we need not reach the issue of whether AOA is an aftermarket purchaser or a pre-market purchaser because, even if AOA is a pre-market purchaser, Mr. Temurcan can represent the interests of the aftermarket purchasers.

invested. (Pesso Decl. Ex. A, Sweeney Dep. at 88:14.) While BPI did, therefore, suffer some pecuniary loss, it was almost purely in a representative capacity, rather than as an investor.

Plaintiffs contend that denying BPI standing to sue would create the possibility that none of BPI's clients would have standing to sue because they delegated all of their investment decisions to BPI. However, plaintiff's argument is based on *Congregation of the Passion, Holy Cross Province v. Kidder, Peabody & Co., Inc.*, 800 F.2d 177 (7th Cir. 1986), which held that the plaintiffs, who had turned their funds over to an investment advisor, had not "bought or sold" the shares in question because they had delegated all of their decision-making authority to the advisor. However, no other courts have adopted this approach. *See Vannest v. Sage, Rutty & Co., Inc.*, 991 F.Supp. 155, 160 (W.D.N.Y. 1997) (specifically disagreeing with the *Congregation* holding and limiting it to its facts while noting that no other circuit had adopted it). Even if the *Congregation* approach were the law in this Circuit and the individual investors had no standing to ·sue on their own, it is likely that Northern Trust, for whom BPI invested the money, would have standing to sue. Another case relied upon by plaintiffs for the proposition that an investment advisor can sue on behalf of its clients, *EZRA Charitable Trust v. Rent-Way, Inc.*, 136 F.Supp.2d 435 (W.D.Pa.2001), is distinguishable on the grounds that the fund in that case was the attorney-in-fact for the investors. *See Smith v. Suprema Specialties*, 206 F.Supp.2d 627, 634–35 (D.N.J. 2002) (holding that "[t]he clients' mere grant of authority to an investment manager to invest on its behalf does not confer authority to initiate suit on its behalf.").

The cases cited by plaintiffs and discussed above all involved suits brought under section 12(2) of the Securities Act, rather than section 11. *See, e.g., Monetary Mgmt. Group of St. Louis, Inc. v. Kidder, Peabody & Co., Inc.*, 604 F.Supp. 764, 766 (E.D.Mo. 1985) (holding that "[section] 12(2) of the 1933 Act does not expressly require that a plaintiff be an owner."). Plaintiffs' reliance on section 12(2) is particularly problematic in

light of plaintiff's contention that the Supreme Court's decision in *Gustafson v. Alloyd Co.*, 513 U.S. 561, 577–78, 115 S.Ct. 1061, 131 L.Ed.2d 1 (1995), which held that aftermarket purchasers cannot sue under section 12(2), does not apply to section 11 claims. The fact that BPI was not the legal purchaser of Turkcell stock prevents them from suing on behalf of its investors. Accordingly, plaintiffs have failed to meet their burden of showing that BPI would be a proper representative, we decline to certify BPI as a lead plaintiff.

### 2. Potential Conflicts Between Named Plaintiffs and Class Members

■ Defendants contend that some of the prospective named plaintiffs are subject to a unique defense, which prevents them from being a named plaintiff. *See Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 903 F.2d 176, 180 (2d Cir.1990) (stating that "class certification is inappropriate where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation."). This potential conflict arises out of defendants' contention that, like section 12(2), section 11 applies only to direct purchasers of securities pursuant to a prospectus. *cf. Gustafson*, 513 U.S. at 577–78, 115 S.Ct. 1061. Defendants did not advance this argument in its motion to dismiss and, in fact, do not raise it now. Instead, they merely state that it would be an issue on appeal.

We reject defendants' argument that this issue creates a conflict for the class. First, section 11 has been held to apply to aftermarket purchasers. While the Second Circuit has not definitively ruled on the issue, in *Barnes v. Osofsky*, 373 F.2d 269, 273 (2d Cir.1967), it indicated, pre-*Gustafson*, that section 11 might apply to aftermarket purchases that could be traced to the registration statement. More recently, most of the courts in this district that have faced this issue have concluded that aftermarket purchasers can sue under section 11. *See In re AMF Bowling Sec. Litig.*, No. 99 Civ. 3023, 2002 WL 461513, at *4 (S.D.N.Y. Mar.26, 2002); *In re Complete Management Sec. Li-*

*tig.*, 153 F.Supp.2d 314, 338–39 (S.D.N.Y. 2001) (collecting cases). *But see In re WRT Energy Sec. Litig.*, Nos. 96 Civ. 3610, 3611, 1997 WL 576023, at *6 (Sept. 15, 1997). Furthermore, the only other circuits to address the issue have all ruled that aftermarket purchasers who can trace their purchases to statements made in the prospectus can sue under Section 11. *See Lee v. Ernst & Young, LLP*, 294 F.3d 969, 978 (8th Cir. 2002); *Joseph v. Wiles*, 223 F.3d 1155, 1160 (10th Cir.2000); *Hertzberg v. Dignity Partners*, 191 F.3d 1076, 1080–81 (9th Cir.1999). The Second Circuit is currently deciding the appeal in *DeMaria v. Andersen*, 153 F.Supp.2d 300 (S.D.N.Y.2001), *appeal docketed*, No. 01–7505 (2d Cir. Apr. 30, 2001), in which the issue is squarely before the panel. Pl. Reply., Ex. A, Amicus Br. of Sec. Exch. Comm. at 20–22.

Second, even if the issue remains one that could arise on appeal, it does not present a serious enough conflict between the class and its representatives to warrant excluding the aftermarket purchasers from the class. For the reasons discussed above, we find that the aftermarket purchasers in the class are adequately represented. Furthermore, the conflict between direct and aftermarket purchasers is not immediate enough to warrant their dismissal. In order for the conflict to interfere with the plaintiffs' ability to represent the class members, the "unique defense" must be central to the litigation. *See, e.g., Baffa*, 222 F.3d at 59–60 (denying certification as representative to a broker who had access to more information than the rest of the class members); *Epifano v. Boardroom Business Products, Inc.*, 130 F.R.D. 295, 300 (S.D.N.Y.1990) (denying class representative status to plaintiff whose husband was a broker involved in the selling group of the initial public offering of the shares at issue). While the conflict cases typically deal with a personal conflict that could impair the representative's ability to protect the class, none of the prospective named plaintiffs in this cases have such a specific conflict. *See Koppel v. 4987 Corp.*, 191 F.R.D. 360, 365 (S.D.N.Y. 2000) (stating that the unique defense rule "has generally been applied only where a full defense is available against an individual plaintiff."). As defendants have implied that they do not intend to raise the section 11 defense at trial, no conflict has been presented.

Finally, the unique defense principle is intended to protect class members in their absence, not defendants. *Trief*, 144 F.R.D. at 200. We view the potential conflict as being too remote to prejudice the class members, and there are too many other safeguards for the plaintiff class, particularly in light of the fact that the Second Circuit will likely have ruled on the section 11 aftermarket issue well before any trial in this case. The conflict, therefore, is unlikely to arise; the Circuit will have made the issue moot or defendants will have moved to dismiss the claims of the aftermarket purchasers.[4] As there are no conflicts among class members that threaten to become the focus of this litigation, class members will be adequately represented by the A.O.A. Securities Anstalt and the named plaintiffs.

## II. Qualifications as a Rule 23(b)(3) Class Action

In order to be certified as a Rule 23(b)(3) class action, plaintiffs must show that:

> the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

---

4. We see no need, at this time, to formally certify any subclasses based on when class members purchased their shares. We recognize, however, that such subclasses may be necessary in the future.

## A. Common Questions of Law or Fact Predominate

The predominance requirement is easily met in securities cases. *Amchem Products v. Windsor,* 521 U.S. 591, 625, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997). In this case, the claims all arise out of a common nucleus of operative fact, namely whether defendants violated the securities laws in the issuance of the registration statement. Any individual questions of law or fact are clearly subordinate, particularly in light of our resolution of the conflict issue above.

## B. Class Action is Superior Method for Adjudication

Defendants argue that class action certification is inappropriate in this case because the Turkish courts do not recognize class actions. The case law suggests that, if there is some possibility that a class action judgment would be enforceable-or at least have some substantial effect-in the foreign jurisdiction at issue, then class certification is proper. *See, e.g., Cromer Finance Ltd. v. Berger,* 205 F.R.D. 113, 135 (S.D.N.Y.2001) (Cote, J.) (holding that class certification was proper even though it was "at most a 'possibility' that a defense verdict will have a res judicata effect abroad."). The *Cromer Finance* decision noted that "many events would have to occur before [the defendant] would be prejudiced by an inability to assert the defense of res judicata successfully," including that the case would have to be tried to judgment, that an absent class member would have to bring a suit in a foreign court "despite such practical deterrents as the unavailability of contingent-fee representation or a class action vehicle," and that an absent class member would have to convince a foreign court to ignore the court's ruling. *Id.* at 135 n. 32. In *In re Lloyd's American Trust Fund Litigation,* No. 96 Civ. 1262, 1998 WL 50211, at *15 (S.D.N.Y. Feb. 6, 1998), the court found that the defendant's "affidavits regarding foreign law do not compel the conclusion that a judgment in the United States would have no value in a foreign court" and that "[t]he significant number of United States Names alone would be sufficient to find that a class action is 'superior to other available methods for the fair and efficient adjudication of the controversy' as required by Rule 23(b)(3)."

Based on the affidavits before us, we cannot conclude that a Turkish court would give *no* weight to a judgment of this court. The defendant's expert focuses on the issue of whether a class action judgment in this court would be enforceable in Turkey. In his opinion, a Turkish court would not enforce an American class action judgment on the grounds that it "violates the Turkish public order." (Sayman Aff. ¶ 2.8.) Plaintiff's expert, however, concludes that the Turkish court would look to the specific ruling of a foreign court, rather than the type of action, in deciding whether to enforce the judgment and would not necessarily be deemed to be "contrary to public policy." (Cosar Aff. ¶ 8(a).) He also states that "the mere fact that the concept of a class action does not exist in Turkey is not enough to reach a conclusion that a foreign court decision entered in a class action cannot be enforced in Turkey." *Id.* Plaintiffs' expert contends that a Turkish court would at least look to the merits of any decision reached by this court, rather than rejecting it outright. Furthermore, it seems unlikely that any substantial American shareholders would pursue an action in Turkey if plaintiffs lose this case.

Defendants rely on *Bersch v. Drexel Firestone, Inc.,* 519 F.2d 974, 996–97 (2d Cir. 1975) (overturning certification of class action suit against a Canadian financial services corporation). However, that decision dealt primarily with the lack of subject matter jurisdiction over the defendant and focused much of its analysis on the extent to which American securities laws applied to foreign corporations. *Id.* at 990–93. The denial of certification followed from the court's decision that plaintiffs without adequate connection to the United States could not be members of the class. *Id.* at 993. As a result, there were issues of fact as to whether the prospective class met the requirements of Fed.R.Civ.P. 23(a). *Id.* at 997 *But cf. In re CINAR Corporation Securities Litigation,* 186 F.Supp.2d 279, 301 (E.D.N.Y.2002) (holding that Canadian company that listed its shares on the NASDAQ exchange was subject to

American securities laws and stating that "[f]oreign companies seeking American capital would be hard-pressed to state their case to potential investors if those investors did not enjoy ready access to their own courts and jurisprudence."). We believe that, having availed itself of the benefits of American capital markets, Turkcell cannot evade the private enforcement mechanism intended to ensure the efficient operation of those markets. Any holding to the contrary would effectively shield many foreign corporations listed in the United States from civil liability. We cannot expect the many American investors who are members of the class to pursue independent actions in Turkey.

The factors enumerated in Rule 23(b)(3)(A) all counsel in favor of a finding that a class action would be a superior form of adjudication in this case. Few class members have an interest in retaining individual control over this case, and those who wish to will have an opportunity to opt out. There is no other litigation pending with similar claims to this action. New York is the proper forum for this action, as several of the underwriters have their headquarters here, and the shares were offered on the New York Stock Exchange. Finally, there are no management issues that warrant a denial of certification. Therefore, we find that a class action is the superior method for adjudication in this case. Defendant's assertion that Turkcell has no American assets does not affect the merits of certification.

### CONCLUSION

For the reasons discussed above, plaintiffs' motion for class certification is granted. A.O.A. Securities Anstalt is certified as lead plaintiff, and Robert Robins, William Rasdolsky, Saul Silverman, William Speier, and Arif Temurcan are certified as named plaintiffs to represent the class of people who purchased American Depository Receipts of Turkcell during the period between July 10, 2000, until September 21, 2000, inclusive, and who can trace their purchase to the July 10, 2000, registration statement. Defendants, the immediate families of each of the individual defendants, any subsidiary or affiliate of Turkcell or the underwriter defendants, and the directors, officers, and employees of Turkcell or the underwriter defendants or its subsidiaries or affiliates, or any entity in which any excluded person has a controlling interest, and the legal representatives, heirs, successors, and assigns of any excluded person, are excluded from the class. Plaintiffs are instructed to submit an appropriate certification order on notice.

**IT IS SO ORDERED.**