**LEWIS TREE SERVICE, INC., et al., Plaintiffs,**

v.

**LUCENT TECHNOLOGIES INC., et al., Defendants.**

**No. 99 CIV. 8556(JGK).**

United States District Court, S.D. New York.

Nov. 12, 2002.

See, also, 2000 WL 1277303.

Russel H. Beatle, Jr., Beatie & Osborn, New York City, for Lewis Tree Service, Inc.

Christopher H. Harris, James E. Tyrell, Jr., Hugh L. Burns, Latham & Watkins, New York City, Joseph E. Hopkins, Scott Louis Weber, Latham & Watkins, Newark, NJ, for Lucent Technologies, Inc., AT&T Corp.

## OPINION AND ORDER

KOELTL, District Judge.

This is a purported class action brought by the plaintiff, Lewis Tree Service, Inc. ("Lewis Tree"), against the AT & T Corporation ("AT & T") and AT & T's Successor, Lucent Technologies, Inc. ("Lucent") (collectively the "defendants") on behalf of purchasers of certain telecommunications equipment sold by the defendants.[1]

---

**1.** Lewis Tree originally brought this lawsuit along with two other plaintiffs, Ironman Magazine ("Ironman") and Ned Davis Research, Inc. ("Ned Davis"). However, as a result of earlier opinions and orders issued by this Court the claims of these other plaintiffs were

Lewis Tree, in a Third Amended Complaint (the "Complaint"), alleges that the telecommunications products sold by the defendants were "Y2K defective" because they could not recognize and process information that contained dates after December 31, 1999. These defects, the plaintiff alleges, rendered these-products inoperable and ineffective, and were known to the defendants at the time they sold such products to Lewis Tree. The plaintiff alleged six causes of action in the Complaint including (1) a claim under the New Jersey Consumer Fraud Act ("NJCFA") N.J.S.A. 56:8–1 et seq.; (2) breach of implied warranties of merchantability and fitness for a particular purpose; (3) breach of contract; (4) breach of express warranty; (5) fraud; and (6) breach of duty of good faith and fair dealing.

The defendants have moved for partial summary judgment on all of the plaintiff's causes of action except the plaintiff's first cause of action, the NJCFA claim.[2] The defendants argue, among other things, that the purchase agreement governing the sale of equipment to the plaintiff specifically disclaimed any express or implied warranties, and also that any contract-related claims and common law fraud claims are barred by the statute of limitations contained in the contract governing the sale. The plaintiff counters that the contract governing the sale was a contract of adhesion and its disclaimers cannot be enforced in the face of fraudulent and misleading representations, and that the statute of limitations should be tolled.

## I.

The standard for granting summary judgment is well established. Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Gallo v. Prudential Residential Servs. Ltd. Partnership, 22 F.3d 1219, 1223 (2d Cir.1994). "The trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." Gallo, 22 F.3d at 1224. The moving party bears the initial burden of "informing the district court of the basis for its motion" and identifying the matter that "it believes demonstrate[s] the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323, 106 S.Ct. 2548. The substantive law governing the case will identify those

dismissed from the action. See Opinion and Order dated November 12, 2002; Lewis Tree Service, Inc. v. Lucent Techs. Inc., No. 99 Civ. 8556, 2000 WL 1277303, at *3–4 (S.D.N.Y. Sept.8, 2000). Ned Davis' claims were dismissed because of a forum selection clause in the agreement governing its purchase that required that any claims be brought in Florida state court. Ironman's claims were dismissed after the defendant's motion to compel arbitration was granted, pursuant to the arbitration provision in Ironman's purchase agreement.

2. At oral argument, counsel for the defendants stated that while there were substantive grounds for moving to dismiss the NJCFA claim, the defendants had refrained from doing so as part of a "strategy" to coordinate this litigation with other lawsuits. (Tr. at 71–74; 78–80.) Counsel argued that the NJCFA claim could be dismissed because such a statutory claim could not be invoked by a nonresident of New Jersey such as Lewis Tree which is a resident of New York. (Tr. at 70–71.) That argument has not been raised on this motion.

facts that are material and "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citing *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962)); *see also Gallo,* 22 F.3d at 1223. Summary judgment is improper if there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party. *See Chambers v. TRM Copy Ctrs. Corp.,* 43 F.3d 29, 37 (2d Cir.1994). If the moving party meets its burden, the burden shifts to the nonmoving party to come forward with "specific facts showing that there is a genuine issue for trial." Fed. R.Civ.P. 56(e). The nonmoving party must produce evidence in the record and "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible." *Ying Jing Gan v. City of New York,* 996 F.2d 522, 532 (2d Cir.1993); *see also Scotto v. Almenas,* 143 F.3d 105, 114–15 (2d Cir. 1998) (collecting cases).

## II.

The defendants have filed a statement of undisputed facts as required by Local Civil Rule 56.1(a) and the plaintiff filed a statement of undisputed facts; however the plaintiff's statement fails to either admit or deny any of the facts the defendants set forth as being undisputed, as required by Local Civil Rule 56.1(b). The plaintiff's statement appears to be directed to class wide allegations in connection with its motion for class certification and does not respond at all to the allegations of undisputed facts asserted by the defendants with respect to Lewis Tree. The plaintiff's failure to respond or contest the facts set forth by the defendants in their 56.1 statement as being undisputed constitutes an admission of those facts, and those facts are accepted as being undisputed. *See* Local Civil Rule 56.1(c); *Gubitosi v. Kapica,* 154 F.3d 30, 31 n. 1 (2d Cir.1998); *United States v. All Right, Title and Interest in Real Property and Appurtenances,* 77 F.3d 648, 657–58 (2d Cir.1996); *John Street Leasehold, LLC v. Capital Mgmt. Res., L.P.,* 154 F.Supp.2d 527, 534 (S.D.N.Y.2001), *aff'd* 283 F.3d 73 (2d Cir. 2002).

There is no genuine dispute as to the following facts. On December 19, 1994, Lewis Tree purchased from AT & T a Merlin Legend Telephone System with Integrated Solutions III software for a total price of $41,532.00. (Defts' Rule 56.1 Stmt. ¶ 7; Purchase Agreement attached as Exh. 20 to decl. of Amy George ("George Decl.") dated June 27, 2002 at 1.) The purchase and sale of this telephone system was made pursuant to a "Business Product Purchase Agreement" (the "Purchase Agreement") which was signed by Diane Faville, a Lewis Tree representative, and Joe Loboldt, an AT & T representative. (Defts' Rule 56.1 Stmt. ¶¶ 9–10; Purchase Agreement at 1.) The Purchase Agreement governing the sale of the Merlin System was Contract No. BP–1–584605. (Defts' Rule 56.1 Stmt. ¶ 12; Purchase Agreement at 1.) On December 19, 1994, Lewis Tree also entered into a Custom Service Protection Plan, under which AT & T was to provide four years of maintenance for the Merlin System. (Defts' Rule 56.1 Stmt. ¶ 14.)

The Purchase Agreement contained various standard terms and provisions through which AT & T, among other things, explicitly limited the express and implied warranties and disclaimed any warranties of merchantability or fitness for a particular purpose. (Defts' Rule 56.1 Stmt. ¶¶ 17,19,21; Purchase Agreement at 2.) The Purchase Agreement also contained a provision limiting AT & T's legal liability to claims filed within twelve (12) months of the cause of action accruing. (Defts' Rule 56.1 Stmt. ¶ 23; Purchase Agreement at 2.) Ms. Faville, who signed the Purchase Agreement on behalf of Lewis Tree, read and understood these provisions when she purchased the Merlin System. (Defts' Rule 56.1 Stmt. ¶¶ 25, 26, 28–29; Purchase Agreement at 1.)

### III.

The original complaint named the law firm of Beatie, King & Abate as the plaintiff and was filed in New York State Court in January, 1999. After the case was removed to federal court, pursuant to 15 U.S.C. § 6614(c)(1) (the "Y2K act"), Beatie, King & Abate was replaced by other named plaintiffs, of which only Lewis Tree now remains. *Supra* n. 1.[3]

There is a threshold question of whether federal or state choice of law rules govern the determination of which state's substantive law is to be applied to the plaintiff's various common law causes of action.[4] In the Y2K Act, Congress did not create a separate federal cause of action, but merely provided that federal district courts would have original jurisdiction over Y2K class actions, and that federal courts, with limited exception, were to apply state substantive law to those claims. *See* 15 U.S.C. § 6603(b), (e). In vesting the district courts with such original jurisdiction, Congress found that significant federal interests were vindicated by having Y2K class action lawsuits proceed in federal courts. With respect to other federal statutes, where such federal interests are present, federal choice of law provisions have been applied, notwithstanding the absence of a federal cause of action. *See,e.g., Corporacion Venezolana de Fomento v. Vintero Sales Corp.,* 629 F.2d 786, 795 (2d Cir.1980) (applying federal choice of law rules to cases in federal court pursuant to the Edge Act). However, it is far from clear that the mere presence of federal question jurisdiction, where state law provides the rule of decision, requires application of federal choice of law provisions. *See In re Gaston & Snow,* 243 F.3d 599, 605 (2d Cir.2001) (noting that "prior cases dealing with ... federal statutes that provide a federal forum for claims that hinge upon state law do not provide clear guidance" as to which choice of law rules are to be applied by federal district court), *cert.*

---

**3.** 15 U.S.C. § 6614(c)(1) provides that federal district courts shall have original jurisdiction of any Y2K action brought as a class action. The term "Y2K action" is defined to include "a civil action commenced in any Federal or State Court ... in which the plaintiff's alleged harm or injury arises from or is related to an actual or potential Y2K failure, or a claim or defense arises from or is related to an actual or potential Y2K failure ..." 15 U.S.C. § 6602(1).

**4.** Defendants' counsel had argued that the case was in federal court because of the diversity of citizenship between the parties, and consequently New Jersey choice of law, rather than federal, choice of law rules apply. *See Klaxon Co. v. Stentor Electric Mfg. Co.,* 313 U.S. 487, 496–97, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). This is incorrect, given that the case was removed to federal court on the basis of a federal statute, the Y2K Act, and not on the basis of diversity of citizenship, and indeed both Lewis Tree and AT & T are both citizens of New York and thus complete diversity of citizenship is lacking.

*denied* —— U.S. ——, 122 S.Ct. 618, 151 L.Ed.2d 540 (2001).

In *Gaston & Snow,* the Court of Appeals declined to require the use of federal choice of law rules, which would have displaced state choice of law rules, in a federal bankruptcy proceeding where the presence of a state contract claim in federal court did not implicate a significant federal interest. *See* 243 F.3d at 606–07. Instead, the Court of Appeals upheld the District Court's use of the choice of law rules of New York, the forum state in which the District Court was located. *Id.* at 607. The Court of Appeals noted that federal choice of law rules are a species of federal common law which the federal courts are extremely limited in fashioning and which should be applied only when there is a significant conflict between some federal policy or interest and the use of state law. *Id.* at 606.

In this case, while the Y2K Act clearly seeks to protect significant federal interests by having Y2K class actions in federal court, there is no true conflict between federal and New York choice of law rules. *See Cromer Fin. Ltd. v. Berger,* Nos. 00 Civ. 2284, 00 Civ. 2498, 2002 WL 826847, at *4 n. 5 (S.D.N.Y. May 2, 2002). Whether New York or Federal choice of law provisions are applied to the plaintiff's claims, New Jersey law would be applied in determining whether the defendant's motion should be granted with respect to any claim arising out of the Purchase Agreement.

The Purchase Agreement, signed by both Lewis Tree and the defendants, contains a choice of law provision that states, in relevant part "The construction, interpretation and performance of this Assignment shall be governed by the local laws of the State of New Jersey." (Purchase Agreement at 2.) Both federal and New York State choice of law rules require that

such contractual choice of law provisions be honored, provided that there is some relationship between the law chosen and the transaction. *See Schiavone Constr. Co. v. City of New York,* 99 F.3d 546, 548 (2d Cir.1996) (finding that New York law recognizes and enforces contractual choice of law provisions); *Advani Enters., Inc. v. Underwriters at Lloyds,* 140 F.3d 157, 162–63 (2d Cir.1998) (federal choice of law rules accord significant weight to a choice of law provision in a contract); *Siegelman v. Cunard White Star Ltd.,* 221 F.2d 189, 193, 195 (2d Cir.1955). The transaction in this case has a significant relationship to New Jersey given the fact that defendant Lucent has its principal place of business in New Jersey. There is no conflict between the application of a federal or state choice of law provision for claims arising out of the Purchase Agreement, and both rules would require that New Jersey law would be applied to such claims. It is therefore unnecessary to resolve the question of whether there are cases or claims where the Y2K Act requires district courts to apply federal choice of law rules. For common law contract-related causes of action, New Jersey substantive law governs pursuant to the parties' contractual law provision.

The choice of law provision in the Purchase Agreement, requiring that New Jersey law be applied, however, does not govern the plaintiff's final cause of action for common law fraud. *Krock v. Lipsay,* 97 F.3d 640, 645 (2d Cir.1996) (under New York law, choice of law provision indicating that the contract will be governed by a certain body of law does not dispositively determine that law will govern a claim of fraud arising incident to the contract); *Cromer Fin. Ltd. v. Berger,* 158 F.Supp.2d 347, 357–58 (S.D.N.Y.2001); *SEC v. Credit Bancorp, Ltd.,* 147 F.Supp.2d 238, 250–51 (S.D.N.Y.2001). On this motion, however,

the only issue raised with respect to the claim of common law fraud is the interpretation of a federal defense allegedly created by the Year 2000 Information and Readiness and Disclosure Act (the "IRDA"). No choice of law problem arises with respect to the fraud claim, because state law plays no role in the interpretation of that federal statute.

## IV.

■ The defendants move for summary judgment dismissing the plaintiff's second and fourth causes of action, for breach of implied warranties of merchantability and fitness for a particular purpose and for breach of express warranty, respectively, on the grounds that the Purchase Agreement specifically disclaimed such liability. Section 13 of the Purchase Agreement, in a section entitled "Limited Warranty" provides in pertinent part, that "EXCEPT AS SPECIFICALLY SET FORTH ABOVE, AT & T AND ITS AFFILIATES AND SUPPLIERS MAKE NO WARRANTIES, EXPRESS OR IMPLIED, AND SPECIFICALLY DISCLAIM ANY WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE." (Purchase Agreement at 2.) This conspicuous and bold language makes clear that AT & T is not making any express or implied warranties, and that it is specifically disclaiming any warranties of merchantability or fitness for a particular purpose.

The Y2K Act requires that disclaimers of warranties in contracts governing the sale of products allegedly containing Y2K defects be strictly enforced. 15 U.S.C. § 6603(d)(1) ("[A]ny written contractual term, including a limitation of an exclusion of liability, or a disclaimer of warranty, shall be strictly enforced unless the enforcement of the term would manifestly and directly contravene applicable State law...") Enforcing general disclaimers of warranties is consistent with New Jersey law, which permits contracts to disclaim warranties of merchantability and fitness, if they are conspicuous, and permits disclaimers of other warranties, regardless of whether such disclaimers are conspicuous, unless they are unreasonable. *See* N.J. Stat. Ann. § 12A:2–316(1)–(2); *Gindy Mfg. Corp. v. Cardinale Trucking Corp.*, 111 N.J.Super. 383, 268 A.2d 345, 349–350 (1970).

In the Purchase Agreement, the defendants' disclaimer of the warranty of merchantability and fitness for a particular purpose, as well as for all other implied or express warranties, is clear and conspicuous. The Court of Appeals for the Second Circuit, interpreting New Jersey law, has enforced the identical warranty disclaimer now present in the Purchase Agreement executed by Lewis Tree and the defendants. *Telecom Int'l Am., Ltd. v. AT & T Corp.*, 280 F.3d 175, 193–94 (2d Cir.2001). Similarly, the District Court for the Northern District of California enforced identical disclaimers to bar implied warranties in another Y2K action. *Medimatch, Inc. v. Lucent Techs. Inc.*, 120 F.Supp.2d 842, 859–60 (N.D.Cal.2000).

The plaintiff argues that these specific and explicit warranty disclaimers cannot be enforced because the Purchase Agreement is a form contract of adhesion, and the disclaimers contained therein were non-negotiable "take it or leave it" provisions that are inherently unfair to Lewis Tree. This argument has no merit.

Under New Jersey law, a contract is a contract of adhesion if the terms of the agreement, "were presented to the public on standardized printed forms, on a take-it-or-leave-it basis without opportunity for purchasers to negotiate any of the terms." *Young v. Prudential Ins. Co. of America, Inc.*, 297 N.J.Super. 605, 688 A.2d 1069,

1077 (1997). However, even if a contract is technically a contract of adhesion, that is only the beginning of the inquiry under New Jersey law. The court must then determine whether the contract is enforceable and that requires a determinations and consideration not only of "the take-it-or-leave-it nature or the standardized form of the document, but also the subject matter of the contract, the parties' relative bargaining position, the degree of economic compulsion motivating the 'adhering' party, and the public interest affected by the contract" in determining whether to enforce the contract. *Id.*

These factors indicate that these specific disclaimers should be enforced. Lewis Tree has put forward no evidence that would convince any reasonable factfinder that the Purchase Agreement is an unenforceable contract of adhesion. Lewis Tree and the defendants are sophisticated corporations with expertise in bargaining and contract negotiation. The contract provided for the purchase of a major telecommunications system for a substantial price in excess of $40,000. The Purchase Agreement was signed by a representative from Lewis Tree, Diane Faville, who testified that she read and understood all of the terms contained therein. (Dep. of Diane Faville ("Faville Dep.") dated October 16, 2001 at 57–58.) Ms. Faville also had Lewis Tree's regular outside law firm available to review the Purchase Agreement, but chose not to request that advice. (Faville Dep. at 58–59.)

There was no compulsion, economic or otherwise, requiring Lewis Tree to purchase its telecommunications equipment from AT & T. Lewis Tree spoke to and considered products from other telecommunication companies, and then ultimately chose to purchase from AT & T. (Faville Dep at 62–63.) The evidence is clear that the Purchase Agreement was not an unenforceable contract of adhesion.

In light of the Y2K Act's requirement that contractual disclaimers are to be strictly enforced, and New Jersey law governing warranty disclaimers, the Purchase Agreement's explicit disclaimer, stating that the defendants were providing no warranties, express or implied, and that any warranties of merchantability or fitness for a particular purpose were being disavowed, must be enforced. Any claims by the plaintiff for breach of such warranties were waived, and must be dismissed as a matter of law. Consequently, the defendants motion for summary judgment is granted with respect to the plaintiff's second and fourth causes of action.

## V.

The defendants also argue that all of the defendants' contract related causes of action, for breach of implied and express warranties, the second and fourth causes of action, breach of contract, the third cause of action, and breach of duty of good faith and fair dealing, the sixth cause of action, must be dismissed because these claims were brought after the relevant statute of limitations period expired.

Section 14 of the Purchase Agreement provides, in relevant part, "No action or proceeding against AT & T or its affiliates or suppliers may be commenced more than twelve (12) months after the cause of action accrues." (Purchase Agreement at 2.) New Jersey law permits parties to reduce contractually the default four year statute of limitations period, as provided for under the Uniform Commercial Code, so long as the resulting period is no less than twelve months. N.J. Stat. Ann. § 12A:2–725(1); *Eagle Fire Prot. Corp. v. First Indem. of Am. Ins. Co.*, 145 N.J. 345, 678 A.2d 699, 704 (1996).

The plaintiff does not argue that its contract claims were brought within one year of the signing of the Purchase Agreement (or the delivery of the allegedly defective equipment) or that the one year period is inapplicable to these claims.[5] Instead, the plaintiff argues that pursuant to the doctrine of equitable estoppel, because the defendants concealed known Y2K defects and committed fraud in executing the Purchase Agreement, the statute of limitations should be tolled until 1998 or 1999, when the plaintiffs were made aware of material Y2K defects. Consequently, the plaintiff argues that it filed this lawsuit within one year of when any tolling period ended. This argument lacks merit.

> Equitable estoppel is:
> [t]he effect of the voluntary conduct of a party whereby [it] is absolutely precluded, both at law and in equity, from asserting rights which might have otherwise existed ..., as against another person, who has in good faith relied upon such conduct, and has been led thereby to change his position for the worse ...

*Fauver*, 707 A.2d at 969. The plaintiff urges that the defendants' intentional and willful concealment of Y2K defects precludes them from invoking the statute of limitations defense. Without resolving the issue of whether the defendants did in fact intentionally conceal these defects or whether they merely failed to disclose them, it is clear that as of February 1997 the defendants no longer were engaging in any conduct that would justify equitable tolling. In February 1997, the defendants had posted on the relevant Year 2000 Lucent website the fact that their telecommunications equipment was not Y2K compliant, and as of that date were no longer concealing, intentionally or otherwise, the purported flaws in their products. Consequently, as of February 1997 any tolling period ended, because the defendants were no longer engaged in the behavior that justified tolling the limitations · period.[6] The plaintiff waited until January, 1999, nearly two years after the disclosures were made on the Lucent site, to file their first Complaint in this action. "[I]f after the cessation of any basis for continued reliance by a plaintiff on the conduct of a defendant, there remains a reasonable time under the applicable limitations period to commence a cause of action, the action will be barred if not filed within the remaining time." *Kaprow v. Bd. of Educ. of Berkeley Township*, 131 N.J. 572, 622 A.2d 237, 246 (1993). The plaintiff failed to file its contract claims within a reasonable time after the tolling period ended, and the entire one year statute of limitations period expired well before the complaint in this case was finally filed. Thus, all the contract related causes of action, specifically causes of action two, three, four, and six were untimely, and must be dismissed as a matter of law.

---

5. The plaintiff does argue that the discovery rule should apply. Under the discovery rule, a cause of action does not accrue until the plaintiff discovers, or by the exercise of reasonable diligence should discover, the factual predicate of the claim. This argument lacks merit, because the discovery rule is generally inapplicable to contract claims. *See County of Morris v. Fauver*, 153 N.J. 80, 707 A.2d 958, 972–73 (1998).

6. The defendants have also argued that this February 1997 internet posting is sufficient to cause the statute of limitations to begin to run for the plaintiff's common law cause of action for fraud, pursuant to a limited defense created by the Internet Readiness and Disclosure Act ("IRDA"). For the reasons given below, it cannot be determined on this motion that the defendant's February 1997 internet posting is sufficient to satisfy the terms of the IRDA. *Infra* § VI.

## VI.

■ The defendants move to dismiss the plaintiff's fifth cause of action, the common law fraud claim on the grounds that this claim is barred as a matter of law because of Lucent's disclosure of Y2K problems on its website. The defendants argue that once Lucent made a Y2K disclosure on its website in February 1997 concerning defects in its telecommunications equipment, it placed the plaintiff on constructive notice, as defined by the IRDA, of such defects, and the appropriate statute of limitations for this fraud claim began to run. The defendants argue that by the time Lewis Tree filed the present lawsuit, the statute of limitations had already expired. Because it cannot be said that as a matter of law that Lucent's disclosure satisfied the requirements of the IRDA, the defendants' motion for summary judgment on this claim is denied.[7]

The IRDA provides, in relevant part,

"[I]n any covered action ... in which the adequacy of notice about year 2000 processing is at issue, the posting, in a commercially reasonable manner and for a commercially reasonable duration, of a notice by the entity charged with giving such notice on the year 2000 Internet website of that entity shall be deemed an adequate mechanism for providing that notice."

15 U.S.C. § 1 note § 4(d)(1). The defendants argue that as of February 1997, the Lucent Year 2000 website contained all relevant and necessary information regarding the failure of Meridian and other telecommunications technology to be Y2K compliant, and because of the IRDA, which provides that such postings are adequate to place the plaintiffs on constructive notice with respect to any possible fraud, the plaintiff failed to file timely its fraud claims.

The plaintiff argues, however, that this February 1997 posting does not satisfy the IRDA, because the statute contains various exceptions that make Lucent's posting insufficient to place the plaintiff on notice of possible Y2K defects in the products it purchased. These exceptions provide that internet notice on a Year 2000 website is insufficient notice when such a posting

(A) is contrary to express prior representations regarding the mechanism of notice made by the party giving notice;

(B) is materially inconsistent with the regular course of dealing between the parties; or

(C) occurs where there have been no prior representations regarding the mechanism of notice, no regular course of dealing exists between the parties, and actual notice is clearly the most commercially reasonable means of providing notice.

15 U.S.C. § 1 note 4(d)(2)(A)-(C). The plaintiff relies upon subsection (B), arguing that any internet postings were materially inconsistent with the regular course of dealings between Lewis Tree and AT & T, which were based upon face-to-face negotiations and conversations.

The defendants, in response, argue that there was no regular course of dealing between the parties, since the purchase by Lewis Tree was an isolated, one-time

---

**7.** It is unnecessary to determine which state's law applies to the fraud claim, and thus what the appropriate statute of limitations for the fraud claim is, because the sole basis upon which the defendants rely for arguing that the statute of limitations expired, the constructive notice pursuant to the IRDA, is insufficient to dismiss the claim. All parties assume for purposes of this motion that the claim cannot be dismissed on statute of limitations grounds unless the website notice was sufficient under the IRDA to begin the running of the statute of limitations.

transaction, and alternatively, that an internet posting was not materially inconsistent with their dealings, because all the companies involved had operating websites at the time the transactions took place. Both sides raise sufficient factual evidence supporting their contentions, so that it cannot be said that, as a matter of law, this exception to the IRDA does not apply. There are genuine issues of fact with respect to a number of issues, including what the precise nature of the interaction between the parties was, the level and frequency of those interactions, and the regularity with which the parties communicated over the internet and website postings. Consequently, summary judgment with respect to the plaintiff's common law fraud claim is denied.

## CONCLUSION

The Court has considered all of the arguments of the parties. To the extent not specifically discussed above, the remaining arguments are either moot or without merit.

For the reasons explained above, the defendants' motion for summary judgment is granted with respect to the plaintiff's second, third, fourth and sixth causes of action which are for breach of implied warranties of merchantability and fitness for a particular purpose, breach of contract, breach of express warranty, and breach of the duty of good faith and fair dealing, respectively. The defendants' motion is denied with respect to the plaintiff's fifth cause of action for common law fraud.

**SO ORDERED.**