**LEWIS TREE SERVICE, INC.,**
et al., Plaintiffs,

v.

**LUCENT TECHNOLOGIES INC.,**
et al., Defendants.

**No. 99 Civ. 8556(JGK).**

United States District Court,
S.D. New York.

Nov. 12, 2002.

Russel H. Beatie, Jr., Beatie & Osborn, New York City, for Plaintiffs.

Christopher H. Harris, James E. Tyrell, Jr., Hugh L. Burns, Latham & Watkins, New York City, Joseph E. Hopkins, Scott Louis Weber, Latham & Watkins, Newark, NJ, for Defendants.

## OPINION AND ORDER

KOELTL, District Judge.

This is a motion brought by the plaintiff, Lewis Tree Service, Inc. ("Lewis Tree"), seeking certification for a nationwide class action lawsuit of a class comprised of all individuals who purchased, leased, or acquired any one of nearly sixty telecommunications products that were sold by the AT & T Corporation ("AT & T") and its successor, Lucent Technologies, Inc. ("Lucent"), (collectively the "defendants"), over a ten-year period and that allegedly contained defects related to processing of dates including and after January 1, 2000 (the "Y2K defect").

The original complaint named the law firm of Beatie, King & Abate as the plaintiff and was filed in New York State Court in January, 1999. After the case was removed to federal court, pursuant to 15 U.S.C. § 6614(c)(1) (the "Y2K act"), Beatie, King & Abate was replaced by other named plaintiffs, of which only Lewis Tree now remains.[1] In the Third Amended Complaint, Lewis Tree alleged six causes of action related to the Y2K defects and failures contained in the products sold by the defendants. The defendants moved for partial summary judgment on five of these causes of action, and this Court in an opinion and order issued together with this opinion has granted the defendants' motion in part and denied it in part. See 239 F.Supp.2d 322, Opinion and Order dated November 12, 2002. Consequently, only two of the original six causes of action remain for the purposes of the class action motion-(1) a claim for common law fraud; and (2) a claim for violations of the New Jersey Consumer Fraud Act ("NJCFA").

The Third Amended Complaint makes various allegations that form the factual basis of this motion for class certification including the following, which for the purposes of this motion for class certification are taken as true. Lewis Tree purchased, leased or acquired one or more of nearly sixty telecommunications products from AT & T or its distributors. (Compl. ¶¶ 1, 76.) These products were all Y2K defective, in that none of the products were able adequately to process information relating to dates on or after January 1, 2000. (Compl. ¶ 3.) The effect of such defects would be to render the products inoperable, ineffective, or obsolete before the end of the expected useful lives of the equipment. (Compl. ¶ 5.) The Third Amended Complaint also alleges that when these products were sold or leased, the defendants knew of these Y2K defects, but deliberately hid them from consumers, and then sought to have the consumers bear the costs of fixing and upgrading the defective systems. (Compl. ¶¶ 4,5,7,81–85.) These misrepresentations, it is alleged, were present in promotional literature sent to purchasers, oral presentations made at the time of sale or as means to induce a sale, and a general company sales and marketing policy of the defendants. (Compl. ¶¶ 4, 5, 70(b)-(i), 110–117, 155–58, 191–92.)

Lewis Tree's action is brought on behalf of "all persons or entities in the United States who purchased lease or acquired" any one of the sixty products listed in the Third Amended Complaint. (Compl. ¶ 64.) The class period is alleged to be from "at least 1990 to the date of the filing of the Third Amended Complaint" in September, 2000. (Compl. ¶ 8.) Lewis Tree, thus, seeks certification of a nationwide class of consumers who over a ten-year period purchased enumerated telecommunications equipment that was not programmed to deal with Y2K related problems when sold. The defendants argue that because of the number of individuals who purchased products under different circumstances in all fifty states, and the variance in the facts and law to be applied to the sales to individual purchasers, the plaintiff's claims fail to satisfy the requirements of Fed. R.Civ.P. 23(a) and 23(b)(3), and a class should not be certified. The defendants also argue that the plaintiff's claims fail to satisfy

---

1. The claims of two of the other named plaintiffs, Ironman Magazine ("Ironman") and Ned Davis Research, Inc. ("Ned Davis") were dismissed in prior opinions and orders of this Court. See 239 F.Supp.2d 322; *Lewis Tree Service, Inc. v. Lucent Techs. Inc.*, No. 99 Civ. 8556, 2000 WL 1277303, at *3–4 (S.D.N.Y. Sept.8, 2000).

the Y2K Act's requirements for Y2K class actions that any purported defect be material for a majority of members of the class. On the other hand, the plaintiffs argue that class certification is appropriate because the circumstances surrounding the sales were similar and exhibited a common pattern of fraudulent concealment by the defendants, and because the choice of law provisions in the sales agreements require that New Jersey law be applied to all the claims of all plaintiffs. For the reasons explained below, Lewis Tree's motion for class certification is denied.[2]

### I.

Before certifying a class, the Court must determine that the party seeking certification has satisfied the four prerequisites of Rule 23(a): numerosity, commonality, typicality, and adequacy of representation. *See Caridad v. Metro–North R.R.,* 191 F.3d 283, 291 (2d Cir.1999); *Marisol A. v. Giuliani,* 126 F.3d 372, 375 (2d Cir.1997); *Comer v. Cisneros,* 37 F.3d 775, 796 (2d Cir.1994); *Dajour B. v. The City of New York,* No. 00 Civ.2044, 2001 WL 1173504, at *3 (S.D.N.Y. Oct.3, 2001). The Court must find, more specifically, that:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a). The Court must also find that the party qualifies under one of the three sets of criteria set forth in Rule 23(b)(1), (2), or (3). *See Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 614, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997); *Comer,* 37 F.3d at 796.

Lewis Tree seeks certification under Rule 23(b)(3), which provides for a class to be maintained where "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3). Rule 23(b)(3) states that:

> The matters pertinent to [these required] findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

*Id.* If the court finds both that the requirements of 23(a) have been met, and that the claims fall within the scope of Rule 23(b)(3), the Court may, in its discretion, certify the class. *See In re Drexel Burnham Lambert Group, Inc.,* 960 F.2d 285, 290 (2d Cir.1992); *Krueger v. New York Tel. Co.,* 163 F.R.D.

---

**2.** Two motions for class certification in cases involving Y2K defects in telecommunications equipment and raising similar legal claims and factual allegations against AT & T and Lucent were pending in two other jurisdictions at the time the present motion was filed by Lewis Tree. Those courts have determined that class certification is appropriate in those cases. *See Comm. Health Assoc. v. Lucent Tech. Inc.,* No. 99–C–948, (W.Va.Cir.Ct. Aug. 8, 2002); *Medimatch, Inc. v. Lucent Techs., Inc.,* 120 F.Supp.2d 842 (N.D.Cal. 2002) (Notice of Intended Decision Re Plaintiffs' Motion for Class Certification). The record before this Court does not include the record before those Courts.

It could be argued that the existence of other classes pursuing similar claims supports the argument that class certification is unnecessary in this case. The remaining plaintiff in this case

may well be a member of the other classes and it cannot be said that certifying another class action would be a superior method of adjudicating any controversy. *See* Fed.R.Civ.P. 23(b)(3). *Cf. In re Prudential Ins. Co. of Am. Sales Practice Litig.,* 261 F.3d 355, 370 (3rd Cir.2001) (upholding district court's injunction prohibiting class members from pursuing multiple class actions in other jurisdictions against the identical defendants).

The parties could have avoided the possibility of inconsistent results, reduced costs, and promoted judicial efficiency by moving to transfer and consolidate the federal actions pursuant to 28 U.S.C. § 1404(a) or § 1407, as appropriate, but chose not to do so.

In any event, for the reasons explained below, the record in this case does not support class action certification.

433, 438 (S.D.N.Y.1995); *Dajour B.*, 2001 WL 1173504, at *3.

A motion for class certification should *not*, however, become a mini-trial on the merits. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177–78, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974); *Krueger*, 163 F.R.D. at 438. The dispositive question is not whether the plaintiff has stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 have been met. *See Eisen*, 417 U.S. at 178, 94 S.Ct. 2140 (citing *Miller v. Mackey Int'l*, 452 F.2d 424, 427 (5th Cir.1971) (Wisdom, J.)). It would be both unwise and unfair to reach the merits of a dispute in this context: resolution of merits issues at this stage might allow some parties seeking certification to secure the benefits of the class action mechanism without first having met its requirements, and might subject some parties to adverse merits rulings without the benefit of the rules and procedural safeguards that traditionally apply in civil trials. *See Eisen*, 417 U.S. at 177–78, 94 S.Ct. 2140. In deciding this motion, the Court should therefore refrain from deciding any material factual disputes between the parties concerning the merits of the claims, *see, e.g., Sirota v. Solitron Devices, Inc.*, 673 F.2d 566, 570–72 (2d Cir.1982); *Meyer v. Macmillan Publ'g Co.*, 95 F.R.D. 411, 414 (S.D.N.Y.1982), and should accept the underlying allegations from the Third Amended Complaint as true. *See Shelter Realty Corp. v. Allied Maint. Corp.*, 574 F.2d 656, 661 n. 15 (2d Cir.1978).

At the same time, the Court must conduct a "rigorous analysis" to determine whether the relevant requirements of Rule 23 have been met. *See General Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 161, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982). The burden of persuasion lies with the party seeking certification, in this case Lewis Tree. *See Bishop v. New York City Dep't of Hous. Pres. and Dev.*, 141 F.R.D. 229, 234 (S.D.N.Y.1992). In deciding whether the requirements of Rule 23 have been met, the Court may examine not only the pleadings but also the evidentiary record, including any affidavits and results of discovery. *See, e.g., Sirota*, 673 F.2d at 571; *Chateau de Ville Prods. v. Tams–Witmark Music Library, Inc.*, 586 F.2d 962, 966

(2d Cir.1978). Hence, the issue on this motion is whether Lewis Tree has met its burden of establishing, on the basis of the pleadings, affidavits, and the results of discovery, that the four prerequisites of Rule 23(a) have been met, and that the proposed class can be maintained under Rule 23(b)(3). *See Dajour B.*, 2001 WL 1173504, at *4; *Krueger*, 163 F.R.D. at 438.

### A.

With regard to the basic Rule 23(a) requirements, the defendants have not argued that Lewis Tree has not met the numerosity requirement. The plaintiff argues that some 150,000 individuals or entities purchased one of the enumerated telecommunications products during the relevant class period, and this is clearly sufficient to meet Rule 23(a)'s numerosity requirement. *See Consol. Rail. Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir.1995) (a proposed class with at least forty members raises a presumption that numerosity has been met in this Circuit); *see also Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir.1993).

■ The plaintiff, however, cannot satisfy the requirements of Rule 23(a)(2) or (a)(3). There is an insufficient showing that there are either questions of fact or law common to the class. While the commonality requirement of Rule 23(a)(2) is usually a minimal burden for a party to shoulder, a class should not be certified when there are no truly common questions of fact or law presented by the plaintiff's claims. *See Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 397–98 (6th Cir.1998) (en banc).

Lewis Tree argues that commonality is satisfied on a factual basis because a common course of conduct was present in the defendants' transactions with all of the class members. Lewis Tree alleges that the defendants, during the course of sales, deliberately concealed the presence of Y2K flaws and defects, and later, after making those defects known, required the purchasers to bear the costs of upgrades to Y2K compliant systems. Moreover, it argues that common facts exist because each of the class members pur-

chased some product from the defendants that contained a Y2K defect.

However, Lewis Tree has merely construed the factual basis of each class member's claim in the most general fashion. Lewis Tree cannot create a common factual predicate for the class members' claims by stating, in the most general terms, that all the cases involved Y2K defects. *See Sprague,* 133 F.3d at 397 ("It is not every common question that will suffice, however; at a sufficiently abstract level of generalization, almost any set of claims can be said to display commonality."). Lewis Tree has failed to present evidence that a common factual nexus exists among the purported class. Consumers purchased one of sixty or more different products, each of which had multiple versions and applications. Lewis Tree has not alleged that these products, and their multiple versions, were similar in any respect, beyond the fact that they all purportedly contained Y2K defects and were telecommunications products. Each of these systems and products had different capabilities, functions and often, vastly different consumers. The effect of Y2K defects on each of these products has not been explained to be similar in any respect. There is no basis in the papers submitted to conclude that for the numerous products at issue for the thousands of customers who purchased them there was a similar material defect in the products' functionality.

Moreover, the factual circumstances of each of the sales was different. Lewis Tree has failed to offer any evidence that the thousands of sales over a decade were made under similar factual circumstances. Indeed, the scant evidence submitted by Lewis Tree indicates precisely the opposite. There were originally three separate plaintiffs in this case. Each had a separate contract with

different provisions and was subject to different sales presentations. While Lewis Tree alleges that the defendants concealed Y2K defects during the sales presentations, there is no allegation or evidence suggesting that there was a common communication or presentation made to potential consumers when the products were sold. In fact, these sales were made over a ten year period by different employees of the defendants and its suppliers, and each sales negotiation would have involved different representations. The subjective understandings of the representations would also have varied from consumer to consumer. The plaintiffs have simply not presented sufficient factual circumstances to suggest there was a common tactic, means or intention to conceal Y2K defects that was carried out in a uniform matter and that had a similar impact upon class members so as to satisfy the commonality requirement. *See id.* at 398 (declining to certify class on commonality grounds where factual variation existed in nature, timing, type, content, and subjective understandings of representations made by defendants); *see also In re LifeU-SA Holding Inc.,* 242 F.3d 136, 145–47 (3d Cir.2001) (commonality found not to exist where plaintiffs' claims did not arise out of single event, but series of misrepresentations made by thousands of individuals agents.)[3]

Lewis Tree does attempt to argue that there were certain common representations made by the defendants in connection with their efforts to offer to members of the class potential "Y2K fixes." (*See* Compl. 29–31; 47–49.) However, as is the case with the allegations surrounding the sales of the products, there is no factual basis to conclude that the presentations regarding possible solutions to Y2K defects made to individual customers of more than sixty different products were materially similar.[4] Problems of vary-

---

**3.** The plaintiff also argues that common issues of fact exist because all of the representations at issue involved an omission—a failure to disclose a Y2K defect. However, characterizing its claims in this manner does not satisfy the commonality requirement. At a basic level, even with respect to a failure to disclose Y2K defects, the plaintiff's claims are centered around individual conversations and representations that would have varied greatly. Moreover, the subjective knowledge, sophistication, and reliance of cus-

tomers over a decade of sales presentations would have differed markedly. The same variations and lack of common issues of fact are present, whether the defendants' fraud is characterized as a failure to disclose Y2K defects or as a deliberate misrepresentation that their products have a useful life beyond the year 2000.

**4.** The plaintiff has not argued that a class of plaintiffs could be established solely on the basis of fraud related to the potential Y2K fixes sold by

ing representations by the defendants' sellers, differing subjective understandings of potential buyers, as well as the different "fixes" sold over an extended period of time, make it impossible to find common issues of fact related to the purported the Y2K solutions that were propounded once the defendants disclosed various Y2K defects.

Additionally, the plaintiffs cannot show that there are common legal issues among the claims by members of the class. Without some uniformity in the legal rules that would be applied to the claims, common legal questions are absent and a certification of a nationwide class action is inappropriate. As the Court of Appeals for the Seventh Circuit recently noted,

> [n]o class action is proper unless all litigants are governed by the same legal rules. Otherwise, the class cannot satisfy the commonality ... requirements of Fed. R.Civ.P. 23(a) ... [Differences in state law] have led us to hold that ...warranty, fraud, or products-liability suits may not proceed as nationwide classes.

*In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1015 (7th Cir.2002); *see also Feinstein v. Firestone Tire & Rubber Co.*, 535 F.Supp. 595, 605–06 (S.D.N.Y.1982) (finding that commonality was not satisfied when purported class members had breach of warranty claims whose elements varied across states). The plaintiff seeks a nationwide class action based on a state common law cause of action, fraud, and a New Jersey statutory claim under the NJCFA. Neither cause of action would result in the application of a common legal rule to claims of class members, and consequently, the plaintiff fails to satisfy the commonality requirement.

As explained more fully below with respect to the predominance inquiry under Rule 23(b)(3), the plaintiff's fraud claim, alone, would require the application of the law of fifty states to the claims of the class members, and because the tort of fraud differs

meaningfully from one jurisdiction to the next, the application of some uniform substantive law is impossible.[5]

■ Moreover, with respect to the NJCFA claim, the plaintiff has failed to allege that all class members or their transactions with the defendants, or any subset thereof, have sufficient connections to New Jersey so as to maintain a claim under the NJCFA. There is no basis from which to conclude that sales made by the defendants, to class members who are scattered throughout the country would provide a basis for those individuals or entities to bring claims under the NJCFA. AT & T is alleged to be incorporated under the laws of New York with its principal place of business in New York. Lucent is alleged to be incorporated under the laws of Delaware with its principle place of business in New Jersey. It is not possible to determine from the papers what connection the state of New Jersey had to the thousands of sales purportedly covered by the class action allegations. The plaintiffs have provided no legal basis from which to conclude that the NJCFA covers sales occurring outside New Jersey, to non-New Jersey residents without any connection to New Jersey. Consequently, the NJCFA does not provide a basis for inferring that common issues of law exist with respect to this purported class action.

■ Lewis Tree also cannot satisfy the typicality requirement that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed.R.Civ.P. 23(a)(3). The typicality requirement is distinct from but "tend[s] to merge" with the Rule 23(a)(2) requirement of commonality since "both serve as guideposts for determining ... whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected." *Falcon*, 457 U.S. at 158 n. 13, 102

the defendants. In fact, the portion of the Third Amended Complaint entitled "Class Action Allegations" does not even mention these solutions and upgrades in the enumerated list of common issues of fact and law. (*See* Compl. ¶ 70.)

**5.** The plaintiff has argued that common legal questions are present based on choice of law provisions contained in the contracts governing the sales to class members. This argument is also unavailing as explained below in the discussion of the predominance inquiry under Rule 23(b)(3).

S.Ct. 2364. For a party to satisfy the typicality requirement, it need not show "that the named plaintiffs' claims are identical to those of the class members but merely that the claims arise from the same course of events." *In re Turkcell Iletisim Hizmelter, A.S. Sec. Litig.,* 209 F.R.D. 353, 356 (S.D.N.Y.2002).

Lewis Tree argues that because its claims arose from a Y2K defect in a family of related products its allegations are typical of those of all other class members. This argument is unavailing for several reasons. First, the plaintiff only purchased two of the over sixty products listed in the Third Amended Complaint that allegedly contained Y2K defects. (*See* Compl. ¶¶ 76, 108.) Second, there is no allegation that the circumstances under which Lewis Tree purchased its equipment were similar to those of other class members. Given the time horizon of the class period and geographic scope of all of these sales, it is difficult to see how there could be a common course of events with respect to the way the products were marketed to class members. In fact, the dismissal of other named plaintiffs in this action reveals that the circumstances under which class members purchased products were markedly dissimilar. The claims of Ironman and Ned Davis were dismissed pursuant to arbitration and forum selection clauses, respectively, present in their sales contracts. Those sales contracts were different from each other, and different from the contract that Lewis Tree entered into with the defendants. This suggests that the representations and negotiations made by the defendants were highly individualized and differed from case to case. Third, Lewis Tree's legal claims are also not typical of the class. As more fully explained below with respect to the predominance inquiry, although all class members may raise fraud allegations, not every class member will have similar legal arguments to prove the defendants' liability, given the different elements of this fraud among the fifty states. It is also unclear which plaintiffs, if any, have claims that prop-

erly arise under the NJCFA. Given the factual and legal dissimilarity between the claims of the plaintiff and those of the remaining class members, Lewis Tree has failed to satisfy the typicality requirement of Rule 23(a)(3).[6]

### B.

■ For Lewis Tree to prevail on its class certification motion on the basis of the allegations in the Third Amended Complaint, common issues of fact and law must also predominate over any individual distinctions among the members of the proposed class. *See* Fed.R.Civ.P. 23(b)(3). This predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Moore v. PaineWebber, Inc.,* 306 F.3d 1247, 1252 (2d Cir.2002) (*quoting Amchem Prods.,* 521 U.S. at 623, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997)).

Lewis Tree argues that common issues of fact predominate because the same Y2K defect was present in all the products purchased and because there were failures to disclose and misrepresentations orchestrated by the defendants in each of the transactions. This argument lacks merit.

The Court of Appeals has recently held that "class certification of fraud claims based on oral representations is appropriate only where the misrepresentations relied upon were materially uniform, [thereby] allowing such misrepresentations to be demonstrated using generalized rather than individualized proof." *Moore,* 306 F.3d at 1249. In *Moore,* the plaintiffs sought to certify a class of individuals who had invested in IRA alternatives that were marketed by the defendant PaineWebber through a centralized marketing scheme, which involved, among other things, telephone scripts and sessions to train brokers on selling techniques. *Id.* at 1250–52. The Court found that the predominance requirement was not satisfied because even though the fraud resulted from a common course of conduct, the defendant's liability would be predicated upon a purchaser's abili-

---

6. The law firm of which the plaintiff's lead counsel was a member was an original plaintiff in this action. Consequently, the defendants argue that the plaintiff is not an adequate representative of the class because its counsel will not adequately represent the class. It is unnecessary to reach this argument, given the other bases on which to deny certification.

ty to show that the purchaser received such misrepresentations, relied upon them, and that they were the proximate cause of any injury. *Id.* at 1252–53. Consequently, because each plaintiff was forced to present individualized evidence of fraud, a series of "mini-trials" would result, and class certification was inappropriate. *Id.* The Court went on to note that where a "common course of conduct is not sufficient to establish liability of the defendant to any particular plaintiff," proof of a common scheme to defraud is insufficient to satisfy the predominance requirement of Rule 23(b)(3). *Id.* at 1255–56.

Lewis Tree's claims are similar to those that were insufficient for the putatative class members in *Moore*. Lewis Tree alleges that there was a common scheme by the defendants to withhold information regarding Y2K defects, and to promote its products based on a misrepresentation that the products could be used without difficulty into the Third Millennium, yet the substantive allegations of fraud are based upon the specific interactions specific class members had with AT & T representatives. Any trial would invariably result in mini-trials on the representations made by the defendants, the timing of such representation given the varying states of knowledge over a decade, the knowledge and sophistication of purchasers, the nature of the contracts governing the purchase of the equipment, the nature of the disclosures made, and the degree of reliance of the consumers. Moreover, the evidence suggests that the identical written materials and contracts were not consistent from consumer to consumer. The fact that there are over sixty products listed in the Third Amended Complaint and that each may have suffered defects to varying degrees further compounds this problem. Consequently, factual issues common to the class cannot predominate, notwithstanding the alleged failure of the defendants to disclose Y2K defects. *See id.; Stephenson,* 177 F.R.D. at 291–292 (noting that where oral representations are involved and written representations are not uniform putative class action not suitable for certification); *Kaczmarek v. Int'l Bus. Machs. Corp.,* 186 F.R.D. 307, 311–12 (S.D.N.Y.1999) (refusing to find predominance of factual issues where plaintiffs sought certification of class of individuals who purchased one of more than one hundred different computer systems that allegedly contained particular processing defect because "detailed factual inquiry into the differences between these models would be required"); *Rothwell v. Chubb Life Ins. Co. of Am.,* 191 F.R.D. 25, 30 (D.N.H.1998).

The factual variations in the claims among members, and the burden such variations place on this Court, is highlighted by the legal basis of Lewis Tree's lawsuit. The nature of the NJCFA and the Y2K Act's requirements will result in a series of "mini-trials" on factual issues and support the finding that class certification is not appropriate. Class members raising NJCFA claims will have to show individual damages and causation, and this factual variance among individual plaintiffs defeats predominance. *See Stephenson,* 177 F.R.D. at 289–90; *Gross v. Johnson & Johnson–Merck Consumer Pharmaceuticals Co.,* 303 N.J.Super. 336, 696 A.2d 793, 799 (Law Div.1997). A similar result occurs because of the Y2K Act. The Act requires that a Y2K class action may only be maintained if "the court finds that the defect in a product or service as alleged would be a material defect for the majority of members of the class." 15 U.S.C. § 6614(a)(2). Given the vast array of products, versions, and consumers in the purported class, the individual determinations of any defect on each of the purported class members would overwhelm any purported advantage of class action status.

Lewis Tree also fails to satisfy the predominance requirement because it cannot show that common issues of law are present so as to make the purported class cohesive. At a basic level, a nationwide class action in which plaintiffs raise claims of fraud would require the application of the law of at least fifty jurisdictions and would make class certification inappropriate.

On this motion, both parties agree that New York choice of law rules govern the substantive law to be applied to the common law fraud claim. Because both parties agree that New York choice of law rules govern, for purposes of the class action motion, this elec-

tion governs. *See 3Com Corp. v. Banco do Brasil, S.A.*, 171 F.3d 739, 743 (2d Cir.1999) ("the parties rely exclusively on New York substantive law, and 'where the parties have agreed to the application of the forum law, their consent concludes the choice of law inquiry.'")(quoting *Am. Fuel Corp. v. Utah Energy Dev. Co.*, 122 F.3d 130, 134 (2d Cir. 1997)); *Estate of Hogarth v. Edgar Rice Burroughs, Inc.*, No. 00 Civ. 9569, 2002 WL 398696, at *28 (S.D.N.Y. Mar.15, 2002); *Kosower v. Gutowitz*, No. 00 Civ. 9011, 2001 WL 1488440, at *4 n. 1 (S.D.N.Y. Nov.21, 2001).

With respect to the claims of fraud, New York choice of law rules apply an interest analysis, applying law of the state with the greatest interest in the litigation. *Lee v. Bankers Trust Co.*, 166 F.3d 540, 545 (2d Cir.1999). And when the plaintiffs and defendants are domiciled in different states, as invariably would be the case for many plaintiffs in a purported nationwide class action, the state in which the tort allegedly took place has the greatest interest, and its law is usually applied. *See id.* (conduct regulating rules usually requires application of law of place of tort); *Krock v. Lipsay*, 97 F.3d 640, 645–46 (2d Cir.1996). New York's interest analysis will usually require the application of the law of fraud of the state where the tort took place. *See id.*

In this case, the representations and alleged failures to disclose Y2K defects, and thus the alleged fraud, took place in all fifty states. The New York choice of law rules would require that the substantive law of the state in which those misrepresentations and fraudulent sales took place to be applied.

The common law of fraud is materially different in the fifty states. The elements of fraud vary greatly from state to state, with respect to elements including mitigation, causation, damages, reliance, and the duty to disclose. *See Bridgestone/Firestone*, 288 F.3d at 1015 (collecting cases); *Rothwell*, 191 F.R.D. at 31; *Stephenson*, 177 F.R.D. at 293–

94; *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 743 n. 15 (5th Cir.1996). This variation and lack of uniformity indicate a uniform substantive law of fraud cannot be applied to the claims of this purported nationwide class. The substantive law of over fifty states would have to be applied to the claims of class members.[7]

Consequently, class certification for fraud claims is inappropriate. "Because these claims must be adjudicated under the law of so many jurisdictions, a single nationwide class is not manageable," and common issues of law cannot predominate over those affecting individual members of the class. *Bridgestone/Firestone*, 288 F.3d at 1019; *In re Rezulin*, 210 F.R.D. at 70–72. Courts have refused to certify nationwide class actions where the substantive law of multiple states must be applied, and nothing in this case counsels a different result. *See, e.g., Kaczmarek*, 186 F.R.D. at 312–13 ("The prospect of determining the law of all fifty states and then applying the materially different laws for some of the claims … would make this class action too complicated and unmanageable."); *In re Rezulin Prods. Liab. Litig.*, 210 F.R.D. 61, 70–71 (S.D.N.Y.2002)(noting that there is a "serious impediment to class treatment posed by a need to apply the laws of all or substantially all fifty states").

Lewis Tree does not argue that applying the law of fifty states would not result in an unmanageable uncertifiable class action. Rather, it argues that the choice of law provision in the purchase agreements governing the sales between class members and the defendants would require that New Jersey substantive law be applied to all of the claims raised by the class. Alternatively, it argues that under the New York choice of law rules, New Jersey law would be applied to all of the actions. Neither contention has merit.

The New Jersey choice of law provision in the Lewis Tree contract governs only claims

---

7. The problem of applying the law of multiple jurisdictions is further exacerbated by the fact that this is a Y2K action. A significant number of states have enacted their own Y2K laws, many of which provide parties with defenses to fraud and other tort actions where the basis of such lawsuits are Y2K defects. *See, e.g.*, Ariz.Rev.Stat. Ann. § 12–744(A)(2002). Such state law Y2K defenses are not preempted by the federal Y2K act, which requires the application of state substantive law to most Y2K litigation. *See* 15 U.S.C. § 6603(e). This wide variance in these Y2K laws also defeats the plaintiff's claim of predominance.

under the contract, not fraud claims. *See* 239 F.Supp.2d at 327–28. Thus, that provision would not indicate that New Jersey law would be applied to the fraud claim of any customer who was a class member. Moreover, there is no evidence that a New Jersey choice of law provision was included in the contracts for the thousands of purchasers who are putative class members. The choice of law provision present in the sales contract between Lewis Tree and the defendants is not present in the contracts of all class members. The prior dismissal of Ironman and Ned Davis from this litigation indicated that the sales contracts were not uniform. The Lewis Tree contract contained a contractual choice of law provision that required application of New Jersey law for contract claims. The Ironman agreement contained an arbitration clause, while the Ned Davis contract contained a forum selection clause along with a choice of law provision requiring the application of the law of the state in which the telecommunications equipment was installed. *See* 239 F.Supp.2d at 324–25; *Lewis Tree*, 2000 WL 1277303, at *4.

Because the plaintiff has put forth no evidence that the contracts of class members have any consistent choice of law provisions, let alone provisions that elect New Jersey law as the substantive law to be applied to claims of fraud, it simply cannot be said that the contracts involved in this litigation on their face satisfy the predominance standard, because they elect the law of one jurisdiction.

Moreover, the law of New Jersey would not be applicable to all of the fraud claims of class members. As noted earlier, the New York choice of law rules would require that the substantive law of the state with the most significant interest in the lawsuit be applied, and with respect to tort claims, this is usually the place of where the tort took place. The fraud alleged in this lawsuit arose in all fifty states, and their laws would be applied to the fraud claims of the purported class. There is no basis from which to conclude that New Jersey has an interest significant enough so as to apply its law to the fraud claims of plaintiffs having no connection to New Jersey.

There is a wide variation of factual and legal issues among the purported class members. There are thousands of individual representations and sales at issues, each of which differs from others. There is also no uniform legal principle to be applied to the claims raised by class members, and the class requires that the law of at least fifty jurisdictions be applied. It is clear that there are many individualized issues of fact and law that overwhelm any common issues in this litigation. The plaintiff has failed to established either factual or legal predominance pursuant to Rule 23(b)(3). Therefore, the plaintiff's motion for class certification is denied.

## CONCLUSION

The remaining arguments of the parties are either moot or without merit. For the reasons explained above, the plaintiff's motion for certification of a nationwide class action on the basis of its two remaining causes of action, common law fraud and a claim under the NJCFA, is denied.

**SO ORDERED.**