Stephen R. STEINBERG, individually and on behalf of a class of policy-holders of Nationwide Mutual Insurance Company, Plaintiff,

v.

NATIONWIDE MUTUAL INSURANCE COMPANY, Defendant.

No. 99 CV 7725(ADS)(ARL).

United States District Court, E.D. New York.

Sept. 4, 2004.

**MEMORANDUM OF DECISION
AND ORDER**

SPATT, District Judge.

Presently before the Court are the following two motions: (1) a motion by the defen-

dant Nationwide Mutual Insurance Company ("Nationwide" or the "defendant") to strike the legal arguments from the reply affidavit of D. Brian Hufford; and (2) a motion by the plaintiff Stephen R. Steinberg ("Steinberg" or the "plaintiff") for class certification pursuant to Federal Rule of Civil Procedure 23 (Fed. R. Civ.P.").

## I. BACKGROUND

### A. Factual Background

The following factual background is set forth in the Court's Memorandum of Decision and Order dated July 27, 2002. Familiarity with that decision is assumed; however, for the purposes of this motion, the Court repeats the pertinent facts.

On an unspecified date, Nationwide sold Steinberg a contract for automobile insurance for his leased 1999 BMW 740I. The insurance contract states: "COMPREHENSIVE COVERAGE. We will pay for loss to your auto not caused by collision of upset. We will pay for the loss less your declared deductible." The contract defines the word deductible as "the amount of loss to be paid by the insured when a loss occurs." The contract also defines the word "loss" as "direct and accidental loss or damage to your auto including its equipment."

The insurance contract also contains a provision entitled, "LIMITS OF PAYMENT." This section states, "ACTUAL CASH VALUE. The limit of our coverage is the cash value of your auto or its damaged parts at the time of loss. We will consider fair market value, age, and condition of the property at the time of loss to determine cash value. We may pay you directly for a loss. We may, at our option, replace your auto."

In September 1999, the plaintiff's BMW engine was damaged by water that entered the engine and caused an "hydraulic lock." On behalf of Nationwide, an adjuster consented to the replacement of the engine and agreed to pay the repairing dealer an unspecified amount for the replacement engine and related work that was made necessary by the loss. The dealer repaired the automobile and Nationwide tendered a check to the plaintiff. However, the check did not reflect

the sum upon which the dealer and the adjuster had agreed or the sum upon which the dealer and the plaintiff had agreed. Nationwide had subtracted from that agreed-upon sum the deductible, which is provided for in the insurance contract, and a "betterment charge" deduction of $563.17. The term "betterment" is not contained in the automobile insurance contract between Nationwide and Steinberg.

Steinberg alleges that the deduction by Nationwide of the "betterment charge" constitutes a breach of the insurance contract between him and Nationwide because, under the contract, the only amount of the loss an insured must pay is the deductible. Steinberg further alleges that the term "deductible" as defined in the insurance contract does not reflect a "betterment charge." Steinberg also contends that Nationwide has breached the contract by applying the "betterment charge" to the loss of parts, such as the engine in the plaintiff's case.

The complaint further alleges that, since on or about January 1, 1993, Nationwide has entered into automobile insurance contracts that are substantially similar to the contract described above with "millions" of people in every state except Hawaii, Massachusetts, and New Jersey. Steinberg seeks to maintain a class action on behalf of all individuals who entered into automobile insurance contracts with Nationwide and have had, since January 1, 1993, a collision or comprehensive loss (1) for which Nationwide paid the amount necessary for repair minus the deductible and a "betterment charge"; or (2) that was repaired at a Blue Ribbon Repair Shop where the insured paid a deductible and a "betterment charge."

### B. Procedural Background

The plaintiff originally commenced this action against Nationwide on October 13, 1999, in the Supreme Court of the State of New York, Suffolk County. On November 24, 1999, Nationwide removed the action to this Court pursuant to 28 U.S.C. §§ 1441 and 1446. In papers dated December 9, 1999, the plaintiff moved to remand the action to state court on the ground that this Court lacked subject matter jurisdiction. In partic-

ular, the plaintiff argued that the amount in controversy did not exceed $75,000.

In a decision and order dated April 6, 2000, *Steinberg v. Nationwide*, 91 F.Supp.2d 540 (E.D.N.Y.2000), this Court denied the plaintiff's motion for remand. The Court held that, although it "[would] not aggregate the potential value of the class in order to sustain the $75,000 jurisdictional amount," the injunctive relief sought by the plaintiff furnishes the basis for federal jurisdiction. *Steinberg*, 91 F.Supp.2d at 543–44. The Court found that, with reasonable certainty, the imposition of an injunction prohibiting the practice of recognizing "betterment charges" would cause economic harm in excess of $75,000 to the defendant. *Id.* at 544. Accordingly, the Court concluded that the plaintiff's request for injunctive relief met the jurisdictional minimum of $75,000. *Id.*

In papers dated September 12, 2001, Steinberg moved the Court for permission to file a Second Amended Complaint, which, he stated, would narrow the claims in the complaint. In particular, Steinberg sought to withdraw a claim that the defendant's use of used, reconditioned, or remanufactured parts when repairing a car is also a breach of contract. In papers dated September 19, 2001, Nationwide stated that it did not oppose the plaintiff's motion. In an order dated September 22, 2001, the Court granted the plaintiff's motion to file a Second Amended Complaint, and Steinberg filed the Second Amended Class Action Complaint on September 26, 2001.

In papers dated October 5, 2001, Nationwide moved to dismiss the Second Amended Complaint on the ground that the Court lacked subject matter jurisdiction. Nationwide stated that Steinberg's Second Amended Complaint did not request the injunctive relief that this Court previously held satisfied the amount in controversy element of diversity jurisdiction. As such, Nationwide argued that the amount in controversy did not exceed $75,000 and that the Court must dismiss the complaint for lack of subject matter jurisdiction. Steinberg conceded that the request for injunctive relief was missing from his Second Amended Complaint and explained that he had inadvertently deleted the re-

quest. On October 24, 2001, Steinberg requested permission to supplement the pleading pursuant to Fed.R.Civ.P. 15(a) so as to include the request for injunctive relief.

In an order dated July 27, 2002, the Court granted Nationwide's motion to dismiss the Second Amended Complaint. The Court also granted Steinberg's motion to file an amended complaint that differed from the Second Amended Complaint only in that it contained a request for injunctive relief. On August 7, 2002, Steinberg filed the Third Amended Class Action Complaint.

## II. DISCUSSION

### A. The Defendant's Motion to Strike Legal Argument from Reply Affidavit of D. Brian Hufford

The defendant moves to strike the legal arguments from the reply affidavit of D. Brian Hufford in support of the plaintiff's motion for class certification. In response, the plaintiff moves to strike the legal arguments from the declaration of Adam S. Levy. A review of the reply affidavit shows that, unlike the Levy declaration, it raises a multitude of legal arguments and citations. Local Civil Rule 7.1 provides:

> **Except as otherwise permitted by the court, all motions and all oppositions thereto shall be supported by a memorandum of law, setting forth the points and authorities relied upon in support of or in opposition to the motion, and divided, under appropriate headings, into as many parts as there are points to be determined. Willful failure to comply with this rule may be deemed sufficient cause for the denial of a motion or for the granting of a motion by default.**

Although the plaintiff did forth his legal arguments in his reply memorandum of law, his attorney's affidavit also contains a number of legal arguments. The legal arguments set forth in the affidavit are improper and have the effect of circumventing the Court's page limits on memoranda which is 10 pages for a reply memorandum. Accordingly, the Court grants the defendant's motion to strike the legal arguments set forth in the reply affidavit by the plaintiff's counsel.

## B. Standards for Class Certification

In determining whether a putative class qualifies for certification, the only question is whether the requirements of Fed.R.Civ.P. 23 have been met. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177–78, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). The Court assumes the allegations in the complaint to be true, and the burden is on the plaintiff to prove that the putative class meets the four threshold requirements of Rule 23(a) and satisfies the requirements of at least one of the categories enumerated in Rule 23(b). *See In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 133 (2d Cir.2001); *Caridad v. Metro–North Commuter RR*, 191 F.3d 283, 291 (2d Cir.1999); *Vengurlekar v. Silverline Technologies, Ltd.*, 220 F.R.D. 222, 226 (S.D.N.Y. Nov.2003).

▬ In deciding certification, courts must take a liberal rather than a restrictive approach in determining whether the plaintiff satisfies these requirements and may exercise broad discretion in weighing the propriety of a putative class. *See In re NASDAQ Market–Makers Antitrust Litig.*, 169 F.R.D. 493, 504 (S.D.N.Y.1996) (citing *Korn v. Franchard Corp.*, 456 F.2d 1206, 1208–09 (2d Cir.1972)); *See also Pecere v. Empire Blue Cross and Blue Shield*, 194 F.R.D. 66, 69 (E.D.N.Y. May 2000). Whether the plaintiffs have stated a cause of action or will prevail on the merits is not a consideration for resolution of a motion for class certification. *See Vengurlekar*, 220 F.R.D. at 226. While the district court must engage in a "rigorous analysis" to establish whether the plaintiff has met its burden of proof as to certification, *Caridad*, 191 F.3d at 291, such a determination must not evolve into a "preliminary inquiry into the merits." *Eisen*, 417 U.S. at 177, 94 S.Ct. 2140.

### 1. Rule 23(a) Requirements

To qualify for class certification, the plaintiff must first prove that the putative class meets the four threshold requirements of Rule 23(a):

(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a); *See also In re Visa Check/MasterMoney Antitrust Litigation*, 280 F.3d 124, 132–33 (2nd Cir.2001).

#### a. Numerosity

Rule 23(a)(1), generally referred to as the numerosity requirement, requires that the class be "so numerous that joinder of all members is impracticable." Fed.R.Civ.P. 23(a)(1). "Impracticable," in this context, is not to be confused with impossible. Rule 23(a)(1) only requires that, in the absence of a class action, joinder would be "difficult" or "inconvenient." *Vengurlekar*, 220 F.R.D. at 227 (internal quotations and citations omitted).

#### b. Commonality

The commonality requirement set forth in Rule 23(a)(2) requires a showing that common issues of fact or law exist and affect all class members. However, the individual circumstances of the class members can differ without precluding class certification. *See Vengurlekar*, 220 F.R.D. at 227. "The critical inquiry is whether the common questions are at the core of the cause of action alleged." *Id.* (internal quotations and citations omitted).

#### c. Typicality

Rule 23(a)(3), also known as the typicality requirement, requires that "each class member's claims arise from the same course of events and [that] each class member makes similar legal arguments to prove [the] defendant's liability." *Vengurlekar*, 220 F.R.D. at 227. The typicality requirement is meant to ensure that the class representative is not subject to a unique defense which could potentially become the focus of the litigation. *See Id.* However, "the mere existence of individualized factual questions with respect to the class representative's claim will not bar

class certification." *Id.* (internal quotations and citations omitted).

### d. Adequacy of Representation

The adequacy of representation requirement set forth in Rule 23(a)(4) requires the plaintiff to prove that the "representative parties will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a)(4). To satisfy this requirement, the plaintiff must demonstrate (1) "that class counsel is qualified, experienced, and generally able to conduct the litigation," *In re Drexel Burnham Lambert Group, Inc.,* 960 F.2d 285, 291 (2d Cir.1992); and (2) "that the proposed class representatives have no interests that are antagonistic to the proposed class members," *Vengurlekar,* 220 F.R.D. at 227. Rule 23(a)(4) also requires that the named representatives be prepared to engage in "vigorous prosecution" of the alleged claim. *Robinson v. Metro–North Commuter R.R. Co.,* 267 F.3d 147, 155 (2d Cir.2001).

### 2. Rule 23(b)(3) Requirements

In addition to satisfying the four prerequisites established in Rule 23(a), the plaintiff must prove that the putative class is maintainable under at least one of the categories enumerated in Rule 23(b). *See In re Visa Check,* 280 F.3d at 133. Here, the plaintiff requests certification under Rule 23(b)(3). A putative class is maintainable under that rule when "the court finds that questions of law or fact common to the members of the class predominate over any questions affecting only individual members and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3).

### a. Predominance

While the commonality requirement of Rule 23(a)(2) mandates that common questions of law or fact exist among the putative class members, the first prong of Rule 23(b)(3), also known as the predominance requirement, is more stringent and requires that such common questions be the focus of the litigation. *See Continental Orthopedic Appliances, Inc. v. Health Insurance Plan of Greater New York, Inc.,* 198 F.R.D. 41, 44,

(E.D.N.Y.2000). In other words, the predominance requirement is used to test whether a class is "sufficiently cohesive to warrant adjudication by representation." *Amchem Prods. Inc. v. Windsor,* 521 U.S. 591, 623, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997) (citing 7A Wright, Miller & Kane 518–19). Common questions of law and fact predominate when issues subject to generalized proof and applicable to the class as a whole predominate over and are more substantial than issues that are subject only to individualized proof. *See In re Visa Check,* 280 F.3d at 136 (citation omitted).

### b. Superiority

The second prong of Rule 23(b)(3), commonly referred to as the superiority element, requires the court to examine whether a class action is superior to other methods of adjudication. *See Vengurlekar,* 220 F.R.D. at 228. Rule 23(b)(3) sets forth four nonexhaustive factors that the court may consider in determining whether a class action is the superior method of adjudication of the putative class' claim:

> **(A) the interest of the members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the difficulties likely to be encountered in the management of a class action.**

Fed.R.Civ.P. 23(b)(3).

### C. Analysis of the Motion for Class Certification

#### 1. Rule 23(a) Requirements

##### a. Numerosity

Nationwide appears to concede that the putative class is "so numerous that joinder of all members is impracticable." Fed.R.Civ.P. 23(a)(1). The putative class involves Nationwide policyholders from 47 states. The plaintiff asserts that, from January 1, 1992 through October 1, 1999, Nationwide policy-

holders made a total of 3,849,503 first-party physical damage claims under their automobile insurance policies throughout the nation. According to the plaintiff, in 1998, there were 49,344 such claims in New York alone, with Nationwide making betterment deductions worth $280,000 with respect to those claims. Accordingly, the Court finds that the plaintiff adequately satisfies the numerosity requirement of Rule 23(a)(1).

### b. Commonality

■ The commonality element of Rule 23(a)(2), which requires the plaintiff to demonstrate that common issues of law or fact exist and affect all class members, is considered a "minimal burden for a party to shoulder." *Lewis Tree Service, Inc. v. Lucent Technologies Inc.*, 211 F.R.D. 228, 231, (S.D.N.Y. Nov.2002). Individual circumstances of the class members can differ without precluding class certification so long as "common questions are at the core of the cause of action alleged." *Vengurlekar*, 220 F.R.D. at 227 (internal quotations and citations omitted).

■ Here, the plaintiff's central issue is whether the uniform language used by Nationwide in its automobile insurance policies permits it to take what it calls a "betterment" deduction from repair reimbursements. The plaintiff seeks certification of a proposed class of:

> **All persons or businesses who entered into automobile insurance contracts with Nationwide, and who, since January 1, 1993, have had a collision or comprehensive loss and for which the insured was responsible for a portion of the repair costs due to a "betterment" charge or deduction imposed by or on behalf of Nationwide (the "Class").**

Because the plaintiff has demonstrated that (1) all putative class members have signed substantively identical or similar form agreements with Nationwide; and (2) Nationwide's practice of taking "betterment" deductions is a common course of conduct that has affected all putative class members, the Court finds that common questions of fact exist among the putative class. *See Lewis Tree*, 211 F.R.D. at 231.

Adjudication of the plaintiff's claim will require the Court to interpret key terms, such as "deductible," "actual cash value," and "loss," as they appear in each of Nationwide's automobile insurance policies. Because these key terms, their definitions, and other pertinent contractual provisions are substantively similar, if not identical, in all of Nationwide's automobile insurance contracts, such contracts can be considered uniform or "form contracts" for the purposes of this litigation. The Court notes that "in light of Rule 23, claims arising from interpretations of a form contract appear to present the classic case for treatment as a class action, and breach of contract cases are routinely certified as such." *Klay v. Humana, Inc.*, No. 02–16333, 2004 WL 1938845, at *17, 2004 U.S.App. LEXIS 18494, at *52 (11th Cir. Sept. 1, 2004) (quoting *Kleiner v. The First National Bank of Atlanta*, 97 F.R.D. 683, 692 (N.D.Ga. 1983)).

That the defendant engaged in a common course of conduct with respect to the putative class further demonstrates that common questions of fact exist among the class. *See Mortimore v. Federal Deposit Insurance*, 197 F.R.D. 432, 436, (W.D.Wash.2000). Nationwide's practice of taking "betterment" deductions is uniform throughout the 46 states in which it operates, with the exception of Texas where Nationwide has recently abandoned the practice. An affidavit submitted by the plaintiff includes a copy of a publication entitled "The Betterment Guidelines" issued by Nationwide. "The Betterment Guidelines" describe the practice of deducting "betterment" charges and are distributed to all Nationwide claims adjustors "in an effort to create uniformity and consistency ... for all material damage claims."

Because Nationwide's automobile insurance contracts are, for the purposes of this litigation, substantially form contracts and Nationwide's practice of taking "betterment" deductions is a standard practice affecting the entire putative class, the Court finds that the plaintiff has adequately shown that a "common factual nexus" exists among the putative class. *Lewis Tree*, 211 F.R.D. at 232.

The Court also finds that common legal issues exist among the putative class. The sole issue presented by the plaintiff, on behalf of the class, is whether Nationwide has breached its automobile contracts by taking "betterment" deductions. This issue is not convoluted or complex. In addition, "some uniformity [exists] in the legal rules that would be applied to the claims." *Id.* As stated by the Supreme Court, "contract law is not at its core diverse, nonuniform, and confusing." *American Airlines v. Wolens,* 513 U.S. 219, 223, 115 S.Ct. 817, 130 L.Ed.2d 715 (1995). Here, the plaintiff's breach of contract claim involves the general principles of contract interpretation that do not differ materially from one jurisdiction to the next.

Accordingly, the Court finds that the plaintiff has adequately proven the existence of common issues of fact and law among the putative class in satisfaction of the commonality requirement in Rule 23(a)(2).

### c.  Typicality

■ The defendant contends that the plaintiff does not meet the typicality requirement of Rule 23(a)(3) because he is "subject to unique defenses which threaten to become the focus of the litigation," *Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith,* 903 F.2d 176, 180 (2d Cir. 1990), such as agreeing to the "betterment" deduction, having been involved in a separate lawsuit against his BMW dealer, and having leased his vehicle, as opposed to a purchase. The Court finds that the plaintiff's act of agreeing to the "betterment" deduction is an issue that will apply to most class members. Nationwide's automobile insurance policies were non-negotiable and, thus, their policyholders had no choice but to accept the "betterment" deduction or else forego all payment for repairs. Moreover, this issue is irrelevant to the question of whether the betterment deductions are permissible under the contract.

That the plaintiff settled a prior lawsuit against BMW and leased his vehicle are also facts irrelevant to the issue of whether Nationwide's "betterment" deductions are in breach of its automobile insurance policies. Accordingly, the Court finds that such defenses do not "threaten to become the focus of the litigation" and thus, do not serve to defeat class certification.

■ The Court notes that "typicality, a matter closely related to commonality, is satisfied when each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." *In re Frontier Ins. Group, Inc. Securities Litigation,* 172 F.R.D. 31, 40 (E.D.N.Y.1997). Here, the putative class, including the plaintiff, put forth one claim, namely whether Nationwide has breached its automobile insurance policies by taking "betterment" deductions. In addition, all of Nationwide's contracts are uniform regarding the provisions pertinent to this litigation and Nationwide's practice of taking "betterment" deductions is standard conduct that has equally affected all class members. Thus, the plaintiff has proven that "the claims of the representative parties are typical of the claims or defenses of the class" and thus, has adequately satisfied the typicality requirement of Rule 23(a)(3).

### d.  Adequacy of Representation

■ The defendant maintains that the plaintiff is inadequate as a class representative. There is "no simple test for determining if a class will be adequately represented by a named plaintiff" and "each case must be approached on an individualized basis." *In re LILCO,* 111 F.R.D. at 672. Among the factors to be reviewed are "the representative's understanding and involvement in the lawsuit," "the willingness to pursue the litigation," and "any conflict between the representative and the class." *Id.* (citing *Eisen v. Carlisle & Jacquelin,* 391 F.2d 555, 562–63 (2d Cir.1968)).

The plaintiff, an attorney and a sole practitioner, initiated this case as a *pro se* litigant and now, after retaining counsel, acts as class representative. He has a sophisticated understanding of the lawsuit and substantial involvement in the litigation. Over the past five years, the plaintiff has narrowed the issues in his lawsuit so as to strengthen his position. Because the plaintiff is no longer

seeking to serve as class counsel, there is no longer any argument that his prior role as *pro se* litigant conflicts with his future role as class representative.

While the defendant challenges the plaintiff's adequate representation on grounds that the plaintiff has changed his position, failed to follow the rules of civil procedure, and provided the defendant with inadequate discovery responses while acting as class counsel, such contentions are irrelevant to the litigation now that the plaintiff has retained the law firm of Pomerantz Haudek Block Grossman & Gross LLP (the "Pomerantz firm") as counsel. The problems of which the defendant complains, including the plaintiff's desire to be paid attorney's fees for the time that he acted as counsel, are not "central to the plaintiff's case" and are not "so substantial that they threaten to undermine the plaintiff's case as a whole." *In re Ski Train Fire in Kaprun,* 220 F.R.D. 195, 203 (S.D.N.Y.2003). Accordingly, the Court finds that the plaintiff is an adequate representative of the putative class.

In addition, the Court finds that the Pomerantz firm is "qualified, experienced, and generally able to conduct the litigation." *Id.* at 201. The Pomerantz firm has a strong reputation as class counsel and has demonstrated its competence to serve as class counsel in this motion for class certification. Accordingly, the Court finds that the plaintiff has satisfied the adequacy of representation requirement of Rule 23(a)(4).

## 2. Rule 23(b)(3) Requirements

### a. Predominance

■ The defendant's central argument against certifying the putative class is that the plaintiff has failed to satisfy the predominance requirement of Rule 23(b)(3). In support of its contention, the defendant argues that, (1) class action litigation would be unmanageable because it would require the application of the substantive law of 46 states; and (2) Nationwide's policies differ substantially from state to state and, therefore, prevent common issues of fact from predominating. However, the majority of the cases that the defendant relies upon to support its claim, *see, e.g., In re Bridgestone/Firestone, Inc.,* 288 F.3d 1012 (7th Cir.2002) (denying certification of a nationwide class in a mass tort case because the forum state's choice of law rules mandated that law of state where injury occurred must apply); *Stirman v. Exxon Corp.,* 280 F.3d 554 (5th Cir.2002) (denying certification of a nationwide class because not all states involved recognize an "implied covenant to market"); *Spence v. Glock, Ges.m.b.H.,* 227 F.3d 308 (5th Cir. 2000) (denying certification of a nationwide class in a design defect action because the law of the place of purchase must be applied), are factually and legally distinguishable in that most involve mass tort litigation involving conflicts of substantive state law or breach of contract claims that require numerous inquiries into individual plaintiff/defendant relationships. Significantly, here, the plaintiff's claim is for the simple breach of a standard form contract and involves only the standard rules of contract interpretation.

■ The burden is on the plaintiff to prove that a state law class should be certified and that common issues of law and fact predominate. *See Potchin v. The Prudential Home Mortgage Company,* No. 97 Civ. 525, 1999 WL 1814612, at *10, 1999 U.S. Dist. LEXIS 22480 at *34 (E.D.N.Y.1999). "To establish commonality of the applicable state law, nationwide class action movants must creditably demonstrate, through an extensive analysis of state law variances, that class certification does not present insuperable obstacles." *Id.* (internal quotations and citations omitted). The Court finds that the plaintiff has adequately met this burden.

■ The plaintiff concedes that the McCarran–Ferguson Act, 15 U.S.C. § 1011, mandates that the laws and regulations of the state of each individual member of the putative class must be applied to analyze and interpret the policy of each putative class member. Nationwide has issued its contracts throughout the country and such contracts are issued under the laws of different states. However, the plaintiff alleges that the differences in the applicable principles of contract law do not drastically differ from state to state and that the variances in the state laws can be categorized and easily man-

aged for effective adjudication of his claim. "A claim or defense can implicate common issues and be litigated collectively, despite the existence of state law variations, so long as the elements of the claim or defense are substantially similar and any differences fall into a limited number of predictable patterns which can be readily handled by special interrogatories or special verdict forms." *Allapattah Serv. Inc. v. Exxon Corp.*, 333 F.3d 1248 (11th Cir.2003) (internal quotations and citations omitted).

In determining whether Nationwide has breached its standard automobile insurance contracts by using "betterment" deductions, a practice that is never expressly described in its contracts, the Court will first be asked to consider whether the contract is unambiguous and, if so, to interpret the unambiguous language. *See Golden Pacific Bancorp v. FDIC*, 273 F.3d 509, 515 (2d Cir.2001). The plaintiff provides a 50–state breach of contract analysis, *see Exhibit 8 to the Hufford Affidavit*, to demonstrate that there are no material differences among the states' pertinent common law breach of contract principles and that contract interpretation principles are also largely identical.

According to the plaintiff, in 39 states, including New York, the Court must simply look at the "four corners" of the form contract to determine if a betterment deduction is permissible under its clear and unambiguous terms. Of those 39 states, the plaintiff alleges that 17 also permit the Court to consider the "reasonable expectations" of a prudent insured in interpreting the contract and determining whether it is ambiguous. The plaintiff asserts that the remainder of those states either do not recognize the "reasonable expectations" doctrine or apply it only after the contract has been deemed to be ambiguous.

For the remaining 12 states which do not follow the "four corners" approach to determine whether ambiguity exists, the plaintiff alleges that the Court may consider extrinsic evidence to determine whether the contract is ambiguous. Of the 12 states, 5 either do not recognize the "reasonable expectations" doctrine or do not recognize it prior to finding that the contract is ambiguous and 7

permit the Court to apply the "reasonable expectations" doctrine in addition to examining extrinsic evidence.

In short, the plaintiff contends that the 50 states can be categorized into 4 groups for this initial analysis of the states' principles of contract law for determining whether a contract is ambiguous: (1) states that follow the "four corners" method without using the "reasonable expectations" doctrine; (2) states that follow the "four corners" method using the "reasonable expectations" doctrine; (3) states that examine extrinsic evidence without using the "reasonable expectations" doctrine; (4) states that examine extrinsic evidence using the "reasonable expectations" doctrine.

The plaintiff further explains that if, at this stage, the Court deems the contract unambiguous, it must simply interpret it to see if a "betterment" deduction is consistent with the clear and unambiguous terms. Thus, if the Court deems the contract unambiguous, the only variations of state law that apply to the adjudication of the plaintiff's claim are those listed above. The Court finds that such variances are manageable. *See In re LILCO*, 111 F.R.D. at 670.

Furthermore, the plaintiff analyzes the variances in state law principles of contract construction that arise if the Court deems the contract ambiguous and is forced to construe the pertinent language. According to the plaintiff, 43 states have adopted a straight-forward interpretation of the *contra proferentem* doctrine which requires a court to interpret any ambiguous provision in a form contract drafted by an insurer in favor of the insured. The plaintiff then asserts that 33 states of the 43 permit the "reasonable expectations" doctrine" to be used in conjunction with *contra proferentem*. For the remaining 8 states, the plaintiff contends, the Court should first consider any extrinsic evidence which may assist it in construing the ambiguous contract prior to applying the *contra proferentem* doctrine. All but two of those states also permit the "reasonable expectations" doctrine to be considered.

Thus, the plaintiff, again, categorizes the states into four groups concerning the state

law principles of ambiguous contract construction: (1) states that use the contra proferentem doctrine in conjunction with the "reasonable expectations" doctrine; (2) states that use the contra proferentem doctrine without the "reasonable expectations" doctrine; (3) states that use extrinsic evidence in conjunction with the "reasonable expectations" doctrine before applying the contra proferentem doctrine; and (4) states that use extrinsic evidence without the "reasonable expectations" doctrine before applying the contra proferentem doctrine. The Court also finds these variances to be manageable. *See In re LILCO*, 111 F.R.D. at 670; *see also Grandon v. Merrill Lynch and Co., Inc.*, No. 95 Civ. 10742, 2003 WL 22118979 at *9–10, 2003 U.S. Dist. LEXIS 16003 at *30–32 (S.D.N.Y. Sept. 2003) (demonstrating unmanageable variances in the application of various state substantive law).

■ Variances in the states' contract laws, such as differences in statutes of limitation, do not preclude class certification. *See In re Energy Systems Equipment Leasing Securities Litig.*, 642 F.Supp. 718, 753, (E.D.N.Y.1986). "Courts have been nearly unanimous . . . in holding that possible differences in the application of a statute of limitations to individual class members, including the named plaintif[f], does not preclude certification of a class action so long as the necessary commonality and, in a 23(b)(3) class action, predominance, are otherwise present." *Id.* (internal citations omitted).

■ Here, the Court finds adjudication of the class action according to the plaintiff's analysis to be manageable. However, if confusion involving the applicable law were to arise later, the Court may sub-classify the putative class. *See In re Visa Check*, 280 F.3d at 141; *In re LILCO*, 111 F.R.D. at 670. A district court has the ability to modify its class certification order, sub-classify members of a certified class, or even decertify the entire class if the need arose. *See In re Visa Check*, 280 F.3d at 141. The plaintiff adds that, if the Court so wished, it could certify a class of all class members from states that have adopted the same rules of construction as New York, the forum state. In other words, the Court could define the class to include residents in all states which apply the four corners doctrine to determine whether the contract is ambiguous, thereby avoiding any potential problem with considering extrinsic evidence. Upon a finding of ambiguity, the Court could apply the contra proferentem doctrine, again, without having to first consider all extrinsic evidence.

While a motion for class certification is not the appropriate vehicle by which to resolve choice of law issues, this Court does not, at the present time, foresee any reason to deny certification based on any potential insurmountable conflicts of law issues. *See In re LILCO*, 111 F.R.D. at 670 ("At this juncture [motion for class certification], it is not necessary for the Court to decide the choice of law issue."); *Maywalt v. Parker & Parsley Petroleum Co.*, 147 F.R.D. 51, 58, (S.D.N.Y. 1993) ("Along with other district courts in this circuit, this court declines to decide choice of law issues on a class certification motion and holds that the application of the laws of different states, if necessary, does not preclude class action litigation of this case.").

■ If a conflict of law is found to exist in this litigation, this Court, sitting in diversity, is bound to apply the choice of law rules of the forum state, New York. *See Schenk v. Red Sage, Inc.*, No. 91 Civ. 7868, 1994 WL 18630 at *10, 1994 U.S. Dist. LEXIS 399 at *32 (S.D.N.Y Jan. 1994) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941)). In the event that a conflict of substantive law did exist in an action sounding in contract, as in this case, New York courts apply a "center of gravity" or "grouping of contracts" test, *Auten v. Auten*, 308 N.Y. 155, 160, 124 N.E.2d 99, 102 (1954), and apply "the law of the jurisdiction having the greatest interest in the litigation." *Walpex Trading v. Yacimientos Petroliferos*, 756 F.Supp. 136, 140, (S.D.N.Y.1991). However, the plaintiff's analysis of the variances in the applicable state law demonstrates that no "actual conflicts" of substantive law exist and that the Court can categorize the variances in state law in a manageable fashion. Thus, the "center of gravity test" is not necessary. *See Maywalt*, 147 F.R.D. at 58 (citing *In re*

*Crazy Eddie Sec. Litig.,* 135 F.R.D. 39, 41 (E.D.N.Y.1991)).

As a federal court sitting in diversity, this Court has the ability to adjudicate class action litigation that involves the application of numerous states laws. *See In re LILCO,* 111 F.R.D. at 670. While the Supreme Court held, in *Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985), that it is unconstitutional for a forum state to apply its own law to a nationwide class action suit when doing so would be "arbitrary" or "fundamentally unfair," *Shutts* does not require this Court "to apply the law of each state in which the plaintiffs resides nor does it prohibit the application of one state's law to all plaintiffs, regardless of residence." *In re LILCO Securities Litig.,* 111 F.R.D. 663, 670 (E.D.N.Y. Aug.1986). When a class action raises common issues of conduct that would establish liability under a number of states' laws, it is possible for those common issues to predominate and for class certification to be an appropriate mechanism for handling the dispute. *In re Buspirone,* 185 F.Supp.2d 363, 377 (S.D.N.Y.2002). "The spectre of having to apply different substantive law does not warrant refusing to certify a class on … common law claims." *In re LILCO Securities Litig.,* 111 F.R.D. at 670.

Moreover, courts in this Circuit have previously acknowledged that "even if New York choice of law rules required a court to apply the law of all fifty states, this would not render the trial per se unmanageable" and that it is "certainly" possible to "apply the laws of many states in a single class action." *In re LILCO Litig.,* 111 F.R.D. at 670; *Leider v. Ralfe,* No. 01 Civ. 3137, 2003 U.S. Dist. LEXIS 21159. at *32 (S.D.N.Y. Mar. 3, 2003).

Next, the defendant argues that its automobile policies are not identical from state to state and that individual issues of fact will inevitably predominate over common issues of fact among the putative class because of such differences. For the purposes of this litigation, the Court is only concerned with the pertinent contractual provisions of the class members' contracts for resolution of the plaintiff's breach of contract claim. The Court will be required to ascertain only whether the practice of taking "betterment" deductions is a breach of the insurance contract.

Here, of major importance, the Court finds that all of Nationwide's automobile insurance contracts contain similar, if not identical, key terms pertinent to this litigation. The plaintiff's contract provides that, in the event of a collision or comprehensive loss, Nationwide will "pay for covered loss above the deductible amount." "Deductible" is defined as "the amount of loss to be paid by the insured when a loss occurs" and "loss" is defined as "direct and accidental loss or damage to your auto including its equipment." Both Nationwide's "comprehensive coverage" and "collision coverage" policies are likewise similarly defined in all contracts from state to state. Each state that Nationwide is responsible for paying the insureds "loss less [their] deductible." "Coverage Exclusions" are also similarly defined in all policies as loss due to "wear and tear," "freezing," and "mechanical or electrical breakdown or failure." Finally, all policies include a section regarding "limits of payment," which describes how Nationwide limits its coverage to the "actual cash value" of the "[insureds] auto or its damaged parts at the time of the loss." All contracts explain that Nationwide will consider "fair market value," "age," and "condition of the property at the time of the loss" to determine cash value. The Court finds that any differences in language or format from policy to policy are only stylistic and do not change the substantive meaning.

The defendant points to differences in Nationwide's policies such as the "specific language regarding losses from non-physical causes" that are contained in only some of the policies and minor variations in language regarding appraisal processes through which Nationwide resolves reimbursement disputes. However, such differences are not relevant to the adjudication of the plaintiff's claim. The plaintiff is neither disputing the amount he was reimbursed nor the methods by which Nationwide appraises automobiles. Rather, the plaintiff asserts simply that Nationwide's practice of taking "betterment" deductions is not written into the contract and is, therefore, in breach of Nationwide's automobile

insurance policies. The terms and definitions significant to the resolution of this claim are substantially similar in all Nationwide's contracts and, as stated previously, the Court emphasizes that "claims arising out of form contracts are particularly appropriate for class action treatment." *Haroco, Inc. v. American Nat'l Bank and Trust Co.,* 121 F.R.D. 664, 669 (N.D.Ill.1988).

The defendant also contends that the Court may be required to apply the individual methods adopted by each state for determining the "actual cash value" of the property and claims that, in failing to address such differences in his analysis of the applicable law, the plaintiff did not meet his burden of providing sufficient analysis of state law in compliance with Rule 23(b)(3). However, because "actual cash value" is defined in each of Nationwide's policies, it is unlikely that the state methods for determining "actual cash value" would be necessary for adjudication of the plaintiff's claim. A review of the Third Amended Complaint reveals that the plaintiff is not claiming that Nationwide's "betterment" deductions are in breach of state regulations, only that the "betterment" deduction is in breach of Nationwide's specific policies.

For purposes of the litigation, the pertinent provisions of Nationwide's policies are substantially uniform and adjudication of the putative class' breach of contract claim would not invoke predomination of individual issues of fact.

#### b. Superiority

The defendant also argues that a class action is not a superior method of adjudication for this claim and that, therefore, the plaintiff does not satisfy the superiority prong of Rule 23(b)(3).

The plaintiff addresses each of the four non-exhaustive factors listed in the Federal Rules for determining whether a class action is a superior method of adjudication. Fed. R.Civ.P. 23(b). The plaintiff alleges that there are no members of the class who seek to individually control the prosecution. *See Id.* Similarly, no other litigation concerning the controversy has been commenced and none of the putative class members has expressed a desire to litigate in a particular forum. *See Id.* In addition, according to the plaintiff's analysis of the variances in the applicable state law and in Nationwide's automobile insurance contracts, the Court finds that no material difficulties are likely to be encountered in the management of the class action. *See Id.*

The defendant alleges that calculating damages for the putative class would be unwieldy because it would require an individual review of each class member's file. However, this Court notes that if common questions of law predominate over individual questions as to liability, courts will generally find Rule 23(b)(3) to be satisfied "even if individual damages issues remain." *Bolanos v. Norwegian Cruise Lines Ltd.,* 212 F.R.D. 144, 158 (S.D.N.Y.2002) (internal quotations and citations omitted).

The defendant also maintains that because some of Nationwide's automobile contracts contain "alternative dispute mechanisms with respect to betterment," class action adjudication is improper. However, after review of the defendant's papers, the Court finds that the arbitration provisions are with regard to Nationwide's appraisal methods used to resolve disputes over reimbursements; the contracts do not contain any arbitration clauses with regard to breach of contract claims.

In sum, "the interests of justice will be well served by resolving the common disputes of potential class members in one forum." *Id.* Class action adjudication will avoid duplicative lawsuits with potentially inconsistent results. In addition, "due to the relatively small size of each individual class member's claim, it is likely that their claims will never be brought to court without use of the class action procedure." *Mortimore v. Federal Deposit Insurance Corp.,* 197 F.R.D. 432, 438 (W.D.Wa.2000). Accordingly, the Court finds that a class action is a superior method of adjudication for the plaintiff's claim and the plaintiff has satisfied the superiority prong of Rule 23(b)(3).

Because the plaintiff has successfully fulfilled the requirements of Rule 23(a) and Rule 23(b)(3), the Court holds that certification of the putative class is proper.

### III. CONCLUSION

Based on the foregoing, it is hereby

**ORDERED,** that the defendant's motion to strike the legal argument from the reply affidavit of the plaintiff's attorney is **GRANTED;** and it is further

**ORDERED,** that the plaintiff's motion for class certification pursuant to Rule 23 is **GRANTED** in its entirety.

**SO ORDERED.**